## BENCO VENDING, INC. *v.* COMPTROLLER OF THE TREASURY, STATE OF MARYLAND, ET AL.

[No. 482, September Term, 1965.]

378

*Decided November 11, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*Mathias J. DeVito* with whom was *Leonard J. Kerpelman* on the brief, for appellant.

*Thomas P. Perkins, III, Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

Benco Vending, Inc., the appellant, sells cigarettes at retail from vending machines which it has placed at 173 locations in Baltimore City and four counties. It has a headquarters, consisting of a warehouse, a shop for servicing the vending machines, and offices, on Caton Avenue in Baltimore. Benco decided that it needed but one trader's license (for its headquarters location) "or at most, one license for each political subdivision" in which it had a vending machine. The alert and zealous guardians of the revenues immediately took a dim view of what they regarded as this novel interpretation of the law and adhered to the "one-license-one-location" construction of the statutes, which they had followed over a period of many years. Benco filed a bill of complaint against the comptroller and the several sheriffs of the political subdivisions in which it had ma-

chines, alleging that at the instance of the comptroller the various clerks of court in the State have interpreted §§ 63 and 64 of Art. 56 of the Code (1964 Replacement Vol.) as requiring the purchase of one trader's license for each "location" or premise upon which Benco has a cigarette vending machine, and further alleging its contrary position. It proffered a cash bond of $4,498, the amount the comptroller claimed it owed for 173 trader's licenses (173 times $26—the $25 license fee per cigarette trader's license imposed by § 64 of Art. 56 and the $1.00 filing fee per license), and prayed (a) a temporary injunction against the collection of any sums which may be due under §§ 63 and 64 of Art. 56 and against enforcement of the criminal sanctions of § 64 (which makes it a misdemeanor not to procure a trader's license, with a fine of $100 upon conviction), and (b) a declaration that §§ 63 and 64 of Art. 56 mean that "each retail seller of cigarettes through vending machines is required to obtain one * * * trader's license, and not one license for each location at which he has vending machines."

Judge Raine heard the case on the allegations of fact in the bill admitted by the answers of the respondents and a stipulation (1) that for the fiscal year ending June 30, 1964, the net proceeds from trader's licenses (gross less 5% to the clerks of court and 3% to the State of Maryland) issued pursuant to §§ 63 and 64 of Art. 56 was $446,194.52, which went to the various political subdivisions, and (2) that Edward J. Dyas, the Chief Inspector of the State License Bureau, would testify that during his association with the Bureau which began in 1954 the trader's license law has been construed and applied to require one license for each location at which there was a cigarette vending machine.

Judge Raine decreed that the intent and meaning of the statutes is to require a separate license for each location at which there is a vending machine. We think that he was right.

Trader's licenses are required by Code (1964 Replacement Vol.), Art. 56, §§ 32-74. Section 32 specifies that no one, "other than the grower, maker or manufacturer," shall sell or offer to sell any goods or merchandise without obtaining a license in the manner prescribed by the subtitle of Art. 56 headed "Traders." Section 33 provides that one who proposes to sell

or offer for sale "anything mentioned in § 32, except spiritous or fermented liquors" shall apply to the clerk of the court in the political subdivision in which he proposes to "carry on such selling" for a license therefor. Section 33 then provides that a license:

> "shall be good and sufficient as a license * * * in every part of the State; provided that such license shall not authorize the holder thereof to open or carry on any store or fixed place of business * * * other than in the place of business designated in said license and in the application therefor, it being intended hereby that a separate trader's license shall be obtained for each store or fixed place of business."

(§§ 35 through 55 specify the amount of the license fee based on the value of the stock in trade at the location involved.) The language last quoted as to a separate license for each place of business first became law as part of Ch. 36 of the Laws of 1929. A separate license has been required for each separate location at which general merchandise is sold, and the fee for each license for general merchandise has been based on the value of the stock in trade at the particular location which the license covers. See *Brown v. State*, 177 Md. 321, 332; *Plantabbs Corp. v. Comptroller*, 225 Md. 65.

Chapter 91 of the Laws of 1890 amended Art. 56 of the Code "title 'Licenses,' sub-title 'Traders'" by adding §§ 54A and 54B to require by § 54A that one intending to sell cigarettes shall apply to the clerk of the court authorized to issue trader's licenses, and by § 54B that the applicant state on oath to the clerk that the cigarettes intended to be sold "contain no injurious drug or narcotic," pay a fee of $50 and be granted a license. Sections 54A and 54B were codified in the Code of 1912 as §§ 58 and 59, respectively, of Art. 56. Chapter 704 of the Laws of 1916 repealed and reenacted § 59 to read that "upon such application, the said Clerk shall demand and receive from said applicant the sum of fifteen dollars before granting said license, and in all cases the said trader shall post the said license in a conspicuous place in his place of business."

In 1922 Attorney General Armstrong ruled in 7 Op. A. G.

252, 253, that under these quoted words a person who operated two separate mercantile establishments at which cigarettes were sold must obtain a separate trader's cigarette license for each location. He said:

> "The positive requirement contained in Section 59 of Article 56 of the Code that 'in all cases said trader shall post said license (cigarette license) in a conspicuous place in his place of business' cannot be complied with unless there is a separate license for each place of business."

In 1939 the Legislature by Ch. 647 of the Laws of that year amended the cigarette trader's license section to provide that in the event the sale of cigarettes is made through vending machines the clerk should furnish the licensee, in addition to the license, a metal tag or stamp to be affixed to the machine "in accordance with regulations of the State Comptroller." It was made a crime to fail to obtain the license or to obey the regulations of the Comptroller.

The language of what is now § 64 of Art. 56 of the Code was adopted by the Legislature in enacting Ch. 351 of the Laws of 1959. That enactment struck out the provisions for metal tags and stamps and made § 64 read as follows:

> "Upon such application, the said clerk shall demand and receive from said applicant the sum of twenty-five dollars before granting said license, and in all cases the said trader shall post the said license in a conspicuous place in his place of business; and in the event the sale of cigarettes is made through vending machines, the clerk shall issue the license in the name of the owner of the machines, who shall display said license on the premises where the machines are located. The license must show the address of the premises where the machines are to be located."

It is apparent that traders both of merchandise generally and of cigarettes in particular have consistently and unbrokenly been required to procure a separate license for each fixed location from which sales are offered or made. In the case of

general merchandise this is by reason of the clear and imperative demands of § 33 of Art. 56 of the Code and the cases such as *Brown v. State, supra,* recognizing this imperative clarity. In the case of cigarettes, whether sold over the counter or by means of vending machines, this has been so from 1922, at least, under Attorney General Armstrong's opinion, since the Legislature not only acquiesced in his construction of then § 59, now § 64, but since has twice—in 1939 and 1959—repealed and reenacted the section and in so doing has used the words he had ruled required a separate license for each fixed location for sales—"In all cases said trader shall post said license [cigarette license] in a conspicuous place in his place of business." The testimony of the Chief Inspector of the State License Bureau that the 1939 statute had received the same construction and application, from 1954 to 1959, as had the 1916 statute, at least from 1922 on, and as has the present 1959 statute from 1959 to date, indicates that the construction and application of the statutes involved to require a license for each place of business has been unbroken and unchallenged from 1922 until Benco challenged their meaning in 1965.

We think the language of § 63—that one intending to sell cigarettes shall apply for a trader's license, and of § 64—that

"* * * in all cases the said trader shall post the said license in a conspicuous place in his place of business; and in the event the sale of cigarettes is made through vending machines, the clerk shall issue the license in the name of the owner of the machines, who shall display said license on the premises where the machines are located,"

buttressed by additional language added to § 64 in 1959, that "the license must show the address of the premises where the machines are to be located," leaves little doubt that Mr. Armstrong's view as to the need for a separate license for each location for over the counter sales of cigarettes applies to sales of cigarettes from vending machines. The words of the applicable sections seem definitely to mean this and such a construction is in harmony with the unmistakable requirement of § 33 that there must be a separate trader's license for each location

at which merchandise is sold. If the statutes left doubt on the point, their legislative history would dispel it. Not only was there legislative acquiescence in the views of the Attorney General from 1922 to 1939, but also there was in 1939 and 1959 in connection with the licenses required for cigarette vending machines use of the very words which had on them the gloss of the Attorney General's opinion, a gloss which could leave no reasonable doubt that a separate license was intended for each location at which a vending machine dispensed cigarettes. In *Read Drug & Chemical Co. v. Claypoole*, 165 Md. 250, 257-58, the Court said of an Attorney General's opinion:

> "This was an official interpretation and the adoption of an administrative construction in a case very analogous to, if not identical with, the one now being considered; and, while courts are not bound by an Attorney General's opinion, or an administrative construction in conformity therewith, yet, when the meaning of the legislative language is not entirely clear, such legal interpretation and administrative construction should be given great consideration in determining the legislative intent. The Legislature knew, or must be presumed to have known, of this interpretation and administrative construction at the time of the passage of the act of 1933, and must be held to have employed the language it did with that interpretation in view."

This principle was similarly applied in *Leitch v. Gaither*, 151 Md. 167. See also *Comptroller v. American Cyanamid Co.*, 240 Md. 491, 504-05, where the principle outlined in the *Read Drug & Chemical Co.* case was recognized and reiterated but found not there to be applicable.

*Order affirmed, with costs.*