VINCENT N. VALENTINE T/A SANDBAR LOUNGE v. BOARD
OF LICENSE COMMISSIONERS OF ANNE
ARUNDEL COUNTY

[No. 146, September Term, 1980.]

*Decided October 15, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, COLE, DAVIDSON and RODOWSKY, JJ.

*Thomas A. Pavlinic,* with whom were *Alan S. Forman* and *Pavlinic & Forman* on the brief, for appellant.

*William A. Franch,* with whom were *L. Dale Burgmeier* and *Goldsborough, Franch & Collett, P.A.* on the brief, for appellee.

RODOWSKY, J., delivered the opinion of the Court.

The question presented in this case is whether the Board of License Commissioners of Anne Arundel County (the Board) is an agency subject to the Administrative Procedure Act (APA), Md. Code (1957, 1978 Repl. Vol.), Art. 41, §§ 244-256A. We shall hold that it is not.

Appellant, Vincent N. Valentine, trades as the "Sandbar Lounge" on Fort Smallwood Road in the Pasadena section of Anne Arundel County. For the year beginning May 1, 1979 he held a class D (taverns), beer, wine and liquor license for those premises, with special licenses permitting Sunday operation and dancing. On March 7, 1980 the Board summonsed the appellant to show cause why his license should not be suspended or revoked. A number of alleged violations were charged under the rules and regulations of the Board which had been generally revised and adopted effective July 1, 1977. There was no publication of the 1977 rules of the Board in the Maryland Register. Nor were the Board rules

approved by the Attorney General of Maryland. Asserting that review by the Attorney General and publication in the Maryland Register were prerequisites to the validity of the rules, appellant filed a bill of complaint in the Circuit Court for Anne Arundel County, seeking a declaration that the rules were invalid and an injunction against their enforcement. Both parties moved for summary judgment. After taking testimony, the circuit court concluded that the statutes establishing the requirements on which appellant relied did not apply to the Board. By reference to the declaration requested in the Board's motion for summary judgment, the trial court declared that the Board was not a state agency subject to the APA. We granted appellant's petition for certiorari prior to consideration of the appeal by the Court of Special Appeals.

The statutory requirements on which appellant relies involve three subtitles of Art. 41: the APA, the State Documents Law (§§ 256B-256T) and, under the subtitle, "General Provisions," § 9. In each instance we are concerned with the provisions of those statutes as of July 1, 1977.

In the APA subtitle, § 245 (c) provided, in relevant part, that "prior to the adoption of any rule authorized by law, or its amendment or repeal, the adopting agency shall publish notice of its intended action in the Maryland Register . . . ." [1] Section 246 provided:

---

1. The full text of Art. 41, § 245 (c), as of July 1, 1977, is:

Except for emergency regulations adopted pursuant to Article 40, § 40A, prior to the adoption of any rule authorized by law, or its amendment or repeal, the adopting agency shall publish notice of its intended action in the Maryland Register, and afford interested persons opportunity to submit data or views orally or in writing. An agency may not adopt or amend any rule or administrative act which increases the agency's expenditures beyond budgetary limitations without the express approval of the General Assembly; or if the General Assembly is not then in session, without the express approval in writing of the President of the Senate and the Speaker of the House of Delegates, acting jointly and after consulting with and receiving the advice in writing of the joint budget and audit committee. Approval by the General Assembly or its presiding officers, as provided in this section, is not required if the Governor by proclamation declares that the rule or administrative act to increase an agency's expenditures beyond budgetary limitations is necessary and a matter of emergency.

> Each agency shall comply with the provisions of § 9 of this article and the State Documents Law.
>
> A rule is effective as provided in the State Documents Law, unless otherwise provided by law.

For the purpose of the APA subtitle, § 244 (a) defined "agency," in relevant part, to mean "any State board, commission, department or officer authorized by law to make rules or to adjudicate contested cases, except those in the legislative or judicial branches . . . ." [2]

The State Documents Law, in § 256C, establishes the Code of Maryland Regulations, and on July 1, 1977 required, *inter alia,* that there "shall be compiled" therein "[e]very administrative rule adopted by any agency pursuant to the procedures of the Administrative Procedure Act . . . ." [3] The Maryland Register, published at least once every two weeks, is a temporary supplement to the Code of Maryland Regulations. Under § 256F (b), the "Register shall include: (1) [e]very document required to be published in the Code of Maryland Regulations . . . ." For purposes of the State Documents Law, as of July 1, 1977, § 256B (c) said that " '[a]gency'

---

This limitation with respect to the agency's budget is applicable to every agency in the executive, judicial, and legislative branches of government notwithstanding any exemptions from the provisions of this subtitle contained in § 244(a) of this subtitle.

There is no contention in this case that the special provision of § 245 (c) relating to rules which increase an agency's expenditures is applicable to the Board's rules of July 1, 1977, and we intimate no opinion on the construction or application of that provision.

2. As of July 1, 1977 § 244(a) provided in full as follows:

"*Agency*" means any State board, commission, department or officer authorized by law to make rules or to adjudicate contested cases, except those in the legislative or judicial branches, and except the Maryland Parole Commission, the Division of Parole and Probation, the Workmen's Compensation Commission, the State Accident Fund, the State Insurance Department of Maryland, the Public Service Commission, the Employment Security Board and the State Tax Commission. The Maryland Automobile Insurance Fund shall not be considered an "agency" within the meaning of this section as to any matter or action with regard to which the Insurance Commissioner has made an express, written finding or determination that compliance with the provisions of the Administrative Procedure Act and/or the State Documents Law by the Maryland Automobile Fund is unnecessary.

3. Md. Code (1957, 1978 Repl. Vol.), Art. 41, § 256C (b) (2).

has the same meaning as under the Administrative Procedure Act."

Section 9 of Art. 41 read as follows on July 1, 1977:

> Prior to the adoption of any rule or regulation by an officer or department of the executive branch of the State of Maryland under any rule-making power granted by the General Assembly of Maryland, the rule or regulation shall be submitted to the Attorney General of Maryland for approval as to its legality. Every officer, department, board, commission, bureau and similar agency of the State government other than those within the Legislative and Judiciary Departments who has power to make, promulgate, adopt or enforce rules and regulations shall file copies of them pursuant to the provisions of the State Document Law. No rule or regulation hereafter made, promulgated or adopted is effective until after compliance with this section.

Appellant does not assert that Art. 41, § 9 applies directly to the Board. The relevance of § 9 to appellant's argument is its incorporation by reference into § 246 of the APA. It is appellant's position that the Board is an agency which must comply with the provisions of the APA.

A board of license commissioners, or "liquor board," such as that for Anne Arundel County, exists and generally functions under Md. Code (1957, 1981 Repl. Vol.), art. 2B. These boards are granted rule making authority under Art. 2B, § 184 (a).[4] This rule making power can be traced to Ch. 2 of the Acts of the Special Session of 1933, Md. Code (1924, 1935 Cum. Supp.), Art. 2B, § 50.[5] Article 2B has never set forth

---

4. Art. 2B, § 184 (a) reads:

In addition to the powers otherwise provided by this article, the Comptroller, the board of license commissioners from any county or Baltimore City, or the State Appeal Board shall, respectively, have full power and authority to adopt such reasonable rules and regulations as they may deem necessary to enable them effectively to discharge the duties imposed upon them by this article.

5. The General Assembly of Maryland convened in extraordinary session on November 23, 1933, in anticipation of the repeal of U.S. Const. amend.

any procedure by which rules are to be adopted by a board of license commissioners.

Other principal functions of liquor boards include determining, after notice and hearing, whether applications for the issuance of alcoholic beverage licenses should be approved or disapproved (Art. 2B, § 60 (a)), whether, upon protest, existing licenses should be renewed (Art. 2B, § 68 (a)), and whether licenses should be suspended or revoked for violation of law (Art. 2B, §§ 69 (a), 69A and 70).

In support of his position that the Board is an "agency" under the APA, appellant points out that boards of license commissioners are created by act of the General Assembly and that they administer statutes enacted by the General Assembly, all pursuant to a policy of this State, declared in Art. 2B, § 1, "that it is necessary to regulate and control the manufacture, sale, distribution, transportation and storage of alcoholic beverages within this State. . . ." However, a mere glance at Art. 2B reflects that it is replete with provisions which apply in only a single county.[6] The Board points out that it may exercise its jurisdiction only within Anne Arundel County.[7] It cites *Bernstein v. Board of Education of Prince George's County,* 245 Md. 464, 471, 226 A.2d 243, 248 (1967) in which that appellee was held not to be an agency under the APA and where we said that "[a] county board of education has control of educational matters affecting only the county, subject to the by-laws and policies of the State Board [of Education]." Appellant emphasizes that the Board is appointed by the Governor pursuant to Art. 2B, § 148 (a) and (b-1), and that its members are subject to removal by the

---

XVIII by U. S. Const. amend. XXI, which was declared ratified on December 5, 1933. Governor Albert C. Ritchie signed Ch. 2 that same day.

**6.** The Express Powers Act, Md. Code (1957, 1981 Repl. Vol.), Art. 25A, § 5 (S) specifically withholds from charter counties, such as Anne Arundel, the power to legislate "with reference to licensing, regulating, prohibiting or submitting to local option, the manufacture or sale of malt or spiritous liquors."

**7.** Art. 2B, § 152, however, provides:

In Annapolis, the mayor, counsellor and aldermen of the City of Annapolis, shall constitute the board of license commissioners for said city. The board of license commissioners of Anne Arundel County shall have no jurisdiction in the City of Annapolis.

Governor under § 156 (a). Indeed, in *Nesbitt v. Fallon,* 203
Md. 534, 102 A.2d 284 (1954), this Court held that a member
of the Board of License Commissioners of Anne Arundel
County was a civil officer "of the State" within the meaning
of Md. Const., Art. II, § 10.[8] The Board counters with Art.
2B, §§ 150 and 151. Liquor boards are appointed by the
boards of county commissioners in Carroll, Cecil, Charles
and Queen Anne's counties, and by the county executives in
Montgomery and Baltimore counties. The county commis-
sioners constitute the board of license commissioners in
Dorchester and Kent counties. In Howard County, the
County Council constitutes the liquor board. Appellant
thrusts with § 155 (c) of Art. 2B which sets the maximum
salaries of members of the Board and with § 158 (d) which
fixes the salaries of the Board's inspectors, clerk and attor-
ney. The Board parries with the fact that its operations are
included in the Anne Arundel County annual operating
budget, that it occupies, free of rent, premises owned by
Anne Arundel County, that its equipment is owned by Anne
Arundel County, that, under Art. 2B, § 63 (c), the fees
collected for alcoholic beverage licenses approved by it are
remitted by the Clerk of the Circuit Court for Anne Arundel
County to the county government for its general purposes
and that, under § 199 (a), fines imposed by the Board are
payable to Anne Arundel County.

We add that the license certificate for the Sandbar Lounge
in this case reads that the appellant "is licensed by the State
of Maryland and the County of Anne Arundel to keep for sale
and sell alcoholic beverages . . . ."

---

8. Md. Const. art. II, § 10 provides:

> [The Governor] shall nominate, and, by and with the advice and
> consent of the Senate, appoint all civil and military officers of the
> State, whose appointment, or election, is not otherwise herein pro-
> vided for, unless a different mode of appointment be prescribed by
> the Law creating the office.

The Attorney General of Maryland has ruled that members of the Board of
License Commissioners for Prince George's County are not public officials of
Prince George's County for purposes of that jurisdiction's ethics code and its
financial disclosure requirements, because they are state officers. 58 Op.
Att'y Gen. 3 (1973).

There is at least one conclusion which clearly emerges from the foregoing review. It is that when Art. 41, § 244 (a) says that " '[a]gency' means any State board [or] commission," and one attempts to apply that definition to a board of license commissioners, the statute does not have so plain a meaning as to preclude resort to administrative construction. *See Smith v. Higinbothom,* 187 Md. 115, 132-33, 48 A.2d 754, 763 (1946). The administrative construction of the APA from its inception has been that liquor boards are not included, and the General Assembly has acquiesced in that interpretation.

The APA took effect on June 1, 1957. Chs. 94 and 428 of the Acts of 1957. Because of the difference between the provisions of the APA relating to appeals from agencies in contested cases and certain provisions of Art. 2B relating to appeals from liquor boards, the Board of License Commissioners for Baltimore City requested the Attorney General to render an opinion on whether it was subject to the APA.[9] By an opinion dated November 21, 1957, he ruled that the APA did not apply. 42 Op. Att'y Gen. 63. The Attorney General placed principal reliance on Md. Code (1957), Art. 41, § 3, which was not a part of the APA, but which provided that "[a]ny officers, boards or commissions not referred to in this article shall not be affected hereby." Inasmuch as liquor boards were not referred to in Art. 41, it was reasoned that no part of Art. 41, including the APA, affected such boards. 42 Op. Att'y Gen. 63, 64-65 (1957).

On May 8, 1962, this Court decided *Pearce v. Board of Liquor License Commissioners of Baltimore County,* 228 Md. 515, 180 A.2d 651 (1962), involving a protestants' appeal to the circuit court from the grant of a liquor license. One issue related to the timeliness of the applicant's intervention in the circuit court. By way of dicta we then said: "The Administrative Procedure Act (which is not applicable in this case) does appear to recognize a distinction

---

**9.** The Board of License Commissioners for Baltimore City was, and is, the only such board for which the Attorney General serves as legal adviser. *See* Md. Code (1957, 1976 Repl. Vol., 1981 Cum. Supp.), Art. 32A, § 2.

between time limitations in regard to the appearance of a party to a proceeding as opposed to an intervenor." *Id.* at 523, 180 A.2d at 655. *Pearce* does not give the reason underlying this parenthetical statement. However, *Pearce* was authored for this Court by Judge C. Ferdinand Sybert who, as Attorney General, had issued the opinion of November 21, 1957.

By Ch. 305 of the Acts of 1963, the APA definition of "agency," Md. Code (1957), Art. 41, § 244 (a), was repealed and re-enacted with amendments in order to include the State Insurance Department among those departments which are specifically excepted from the definition. No change was made in the statute at that time to reject the construction which the Attorney General had placed upon it.

Art. 41, § 3 was substantially rewritten by Ch. 156 of the Acts of 1969, and further amended by Ch. 415 of the Acts of 1970, all as part of the movement toward a general reorganization of the executive and administrative departments of state government. As rewritten, § 3 of Art. 41, Md. Code (1957, 1978 Repl. Vol.) provides:

> The executive and administrative departments, offices, boards and other units of the State government now existing or created during this or any subsequent session of the General Assembly which are not assigned to and do not constitute one of the principal departments may be placed at the discretion of the Governor in one of the principal departments at the time of or at any time after the establishment of the appropriate principal department. Each of the principal departments shall be constituted and shall have and exercise the rights, powers, duties, obligations and functions provided by law. Any officers, agencies, boards or commissions specifically exempted in this or any other article shall not be affected hereby.

We find no statute or executive order of the Governor assigning boards of license commissioners to a principal

department. Nor do we find any statute which specifically exempts boards of license commissioners from the plan for executive department reorganization.

Again, in 1972, by Ch. 569, the General Assembly re-enacted Art. 41, § 244 (a) to exempt the State Accident Fund, but no change was made affecting the gloss as to liquor boards which the Attorney General had put on "agency."

It might be contended that the 1969 repeal of old § 3 of Art. 41, on which the Attorney General relied in his 1957 opinion, eliminated the basis for excluding liquor boards from the Art. 41, § 244 (a) definition of "agency," so that it should thereafter automatically be construed to include license commissioners. However, the construction lived on after the reason given by the Attorney General for the construction had disappeared. This is made plain by administrative practice under the State Documents Law, which was enacted by Ch. 600 of the Acts of 1974.

From 1974 until 1978, § 256B (c) of the State Documents Law said that "agency" has "the same meaning as under the Administrative Procedure Act." The State Documents Law is administered by the Division of State Documents of the Office of the Secretary of State. In the court below the assistant administrator of the Division of State Documents testified without contradiction that that division has *never* published the rules and regulations of any liquor board in the State of Maryland. Indeed, the chairman of the Board, who has served on it for 10 years, testified that on two occasions he submitted rules and regulations of the Board for publication in the Maryland Register but they were turned down by the Secretary of State.

In 1976, by Ch. 648, and in 1977, by Ch. 528, the APA definition of "agency" was further amended with respect to the Maryland Automobile Insurance Fund and the Parole Commission, but without the Legislature making any change in the Attorney General's 1957 construction or in the administrative practice of two decades which had resulted therefrom.

What we said in *Smith v. Higinbothom, supra,* 187 Md. at 132-33, 48 A.2d at 763, is applicable here:

> This Court considers that the construction placed upon a statute by administrative officials soon after its enactment, when not changed by legislative or judicial decision, is generally the best construction. It is true that the administrative construction of a statute does not preclude an inquiry by the Court into the correctness of such construction, for no custom, however long and generally it has been followed by officials of the State, can nullify the plain meaning and purpose of a statute. But where the language of a statute is susceptible of two constructions, a long-continued and unvarying construction applied by administrative officials is strong persuasive influence in determining the judicial construction of the statute, and it should not be disregarded except for the strongest and most urgent reasons. *Leitch v. Gaither,* 151 Md. 167, 176, 177, 134 A. 317; *American-Stewart Distillery v. Stewart Distilling Co.,* 168 Md. 212, 217, 177 A. 473; *Bouse v. Hutzler,* 180 Md. 682, 687, 26 A.2d 767, 141 A.L.R. 843 . . . . By re-enactment of the section now before the Court in exactly the same words contained in the Act of 1908, the Legislature gave tacit approval to the construction placed upon the section by administrative officials. In declaring the meaning of a statute, the Court may avail itself of the construction put upon it by the Legislature itself through long-continued acquiescence. The Legislature's acquiescence in the administrative construction furnishes a strong presumption that the intention has been interpreted correctly.

In *Read Drug & Chemical Co. v. Claypoole,* 165 Md. 250, 257-58, 166 A. 742, 745 (1933), we said the following with respect to opinions of the Attorney General construing statutes:

> This was an official interpretation and the adoption

of an administrative construction in a case very analogous to, if not identical with, the one now being considered; and, while courts are not bound by an Attorney General's opinion, or an administrative construction in conformity therewith, yet, when the meaning of the legislative language is not entirely clear, such legal interpretation and administrative construction should be given great consideration in determining the legislative intent. The Legislature knew, or must be presumed to have known, of this interpretation and administrative construction at the time of the passage of the act of 1933, and must be held to have employed the language it did with that interpretation in view.

*Accord, Williams v. Loyola College,* 257 Md. 316, 329, 263 A.2d 5, 11-12 (1970); *Benco Vending v. Comptroller,* 244 Md. 377, 382, 223 A.2d 759, 762 (1966); *Comptroller v. Rockhill, Inc.,* 205 Md. 226, 233, 107 A.2d 93, 97 (1954); *Vaughan v. Boone,* 191 Md. 515, 521-22, 62 A.2d 351, 354 (1948). Here, there was not only an administrative construction, but also a contemporaneous dicta statement by this Court in *Pearce v. Board of Liquor License Commissioners, supra,* which reinforces the legislative acquiescence in the construction of "agency" in this case.

In addition to the legislative acquiescence in the administrative construction, there are two other factors which support our conclusion that "agency" in the APA is not intended to embrace boards of license commissioners. The State Documents Law definition of "agency" was amended by Ch. 858 of the Acts of 1978 to eliminate the incorporation of the APA definition. "Agency" *now* means "any State board, commission, department or officer authorized by law to make rules or adjudicate contested cases, except those in the legislative or judicial branches." Md. Code (1957, 1978 Repl. Vol., 1981 Cum. Supp.), Art. 41, § 256B (c) (1). The title to Ch. 858 states that the purpose of changing the definition was "to require additional State agencies to comply" with the State Documents Law. Then, by Ch. 464 of the Acts of 1981, § 256B (c) was divided into two subsections. The first subsec-

tion continues the immediately pre-existing definition but subsection (2) states that " '[a]gency' does not include any Board of License Commissioners in the State." By § 2, Ch. 464 further enacts that it "may not be construed to affect the status of Boards of License Commissioners for any purpose other than exclusion from the State Documents law." [10] We need not in this case determine whether rules and regulations promulgated by a board of license commissioners in the period between June 1, 1978 and July 1, 1981 [11] were required to be adopted in accordance with the State Documents Law. It is sufficient for present purposes to note that the first explicit declaration by the General Assembly of its intent on the applicability *vel non* to liquor boards of the rule making procedures of the State Documents Law is consistent with that which we have determined, from legislative acquiescence in the administrative construction, to have been the legislative intent at least up to and including July 1, 1977.

Our conclusion is also supported by consideration of the law relative to the limited nature of judicial review of liquor board decisions in contested cases. For example, at the time the APA was enacted, the decision of a circuit court on an appeal from a liquor board was final, unless the case finally decided "a point of law at variance with any decision previously rendered by any other judge of the State on the same question . . . ." Md. Code (1957), Art. 2B, § 175 (f). That provision continues in effect today. Md. Code (1957, 1981 Repl. Vol.), Art. 2B, § 175 (f). Appeals governed by the APA are not so limited. Art. 41, § 256. This Court has consistently applied the judicial review provisions of Art. 2B to appeals in liquor board cases, most recently in *Brown v. Baer* [No. 145, Sept. Term, 1980, decided October 8, 1981]. If in adopting the APA the General Assembly had intended

---

**10.** House Bill 1623, which became Ch. 464 of the Acts of 1981, was accompanied in its legislative consideration by a fiscal note stating that the "Division of State Documents, Secretary of State, advises that they do not now publish any of the regulations addressed by this bill and that the legislation is clarifying in nature."

**11.** These are the effective dates of the § 256B amendments discussed above. *See* ch. 858, sec. 2 of the Acts of 1978; ch. 464, sec. 3 of the Acts of 1981.

"agency," as used therein, to embrace liquor boards, it is clear that that intent did not extend to the judicial review provisions of the APA. Thus, appellant's contention that the APA governs the rule-making function of liquor boards would lead to the seemingly anomalous result that the General Assembly intended "agency" to have a different meaning as to liquor boards in different sections of the APA, without any express language in the APA to support that distinction. Such a distinction would then necessarily have to rest on having the prior, but more specific, provisions of Art. 2B, § 175 construed to prevail over the later enacted, but more general, judicial review provisions of the APA. We think the administrative practice shows that the legislative intent was not so subtly compartmentalized and that a liquor board was not intended to be an "agency" under the APA either as to rule-making or in deciding contested cases.

We hold that as of July 1, 1977 when the rules in issue here were adopted, the Board of License Commissioners of Anne Arundel County was not an "agency" within the meaning of the APA.

*Judgment of the Circuit Court for Anne Arundel County affirmed. Appellant to pay the costs.*