958 A.2d 289

Frank G. PRIDGEON, Sr., et al.

v.

BOARD OF LICENSE COMMISSIONERS FOR PRINCE GEORGE'S COUNTY.

No. 97, Sept. Term, 2007.

Court of Appeals of Maryland.

Oct. 9, 2008.

230

Robert J. Kim (McNamee, Hosea, Jernigan, Kim, Greenan & Walker, P.A., Greenbelt, on brief), for Appellants.

Edmond B. O'Connell, Upper Marlboro, for Appellee.

Argued before BELL, C.J.,* RAKER, HARRELL, BATTAGLIA, GREENE, MURPHY and DALE R. CATHELL, (Retired, specially assigned), JJ.

---

* Raker, J., now retired, participated in the hearing and conference of these cases while an active member of this Court; after being recalled

MURPHY, J.

This appeal from the Circuit Court for Prince George's County presents the question of whether that county's Board of License Commissioners (the Board) erroneously refused to renew a liquor license on the ground that the Board (in the words of appellants' brief) "ignored the withdrawal of the protest by the sole Protest Group and[,] contrary to its practices and policies, conducted the protest hearing while taking testimony from politicians and persons who otherwise have no standing to protest the Appellants' application for renewal of the alcoholic beverage license." For the reasons that follow, we hold that the Board's decision was not errone-ous. We shall therefore affirm the judgment of the Circuit Court.

## Background

In a letter dated February 26, 2006 and signed by its president, the *Hillside Civic Association* of Capitol Heights, Maryland, advised the Board that the association "wishes to protest to the renewal of liquor license for Senate Liquor Store located at 5000 Marlboro Pike, Capitol Heights, Mary-land." Attached to that letter was an "opposition to the renewal of the liquor license for Senate Liquors" signed by twelve persons, including the Civic Associations' president, who signed this document in her individual capacity.

In a six page ruling dated May 24, 2006, the Board (1) refused to renew the Class B +, Beer, Wine & Liquor license that had been issued to appellant Frank Pridgeon, Sr., for the use of a corporation operating the Senate Inn, and (2) ordered that the proprietors of the Senate Inn "cease the sale and service of alcoholic beverages as of 12:00 midnight, May 31, 2006." The Board's ruling included the following findings and conclusions:

> The Board finds that a valid protest of the renewal of this license was timely and legally filed by ten or more citizens.

pursuant to the Constitution, Article IV, Section 3A, she also participat-ed in the decision and adoption of this opinion.

Prior to the hearing the licensees came to an agreement with a local citizens' association that, in return for certain operating concessions, that particular association would not oppose the renewal of the license. During the hearing the licensee argued that this agreement made the protest moot. The Board finds that the matter of renewal is controlled by Article 2B, Section 10–302(g)(2) of that statute states unequivocally that "... If a protest is filed the license shall not be renewed without a hearing before the Board of License Commissioners." The Board finds that this proceeding is not one between two private parties who can settle the matter before a disinterested magistrate. The Board is not a disinterested party. It is charged with the responsibility of regulating the sale of alcoholic beverages. This license is not one, which is controlled in any way by the protesting parties. They cannot issue, suspend or revoke a license. That function is reserved to the Board. The Board finds that once a legitimate protest is filed it must conduct a hearing on the question of renewal. While conducting the hearing in this matter the Board received evidence from a number of persons who opposed the renewal. The Board finds and concludes that the agreement between the licensees and the citizens association does not preclude the Board from holding a hearing and making an independent finding on the question of renewal.

Appellants' PETITION FOR JUDICIAL REVIEW of the Board's decision included the following assertions:

1. On or about February 27, 2006, Hillside Civic Association submitted a letter to [the Board] protesting Senate Inn Restaurant and Liquors' ("Senate Inn") Application for Renewal of its Class B +, BWL License.

2. Up to the protest hearing scheduled for May 10, 2006, the [appellants'] counsel and [ ] counsel to Hillside Civic Association negotiated, prepared and obtained signatures to a Voluntary Agreement.... The Voluntary Agreement was signed by [appellants] and the President of Hillside Civic Association.

3. Prior to the protest hearing scheduled on May 10, 2006, the parties submitted and filed the Voluntary Agreement with [the Board].

4. In spite of the Voluntary Agreement, [the Board] held a hearing without Hillside Civic Association's protest.

\* \* \*

8. With the submission of the Voluntary Agreement and the lack of [a] protestant, [the Board] should have accepted Senate Inn's Application for Renewal.

9. With the submission of the Voluntary Agreement and withdrawal of Hillside Civic Association's protest, there cannot be a protest hearing and [the Board] should not have proceeded with the protest hearing.

10. Furthermore, [the Board] failed to follow its own rules and procedures in conducting the protest hearing.

The circuit court affirmed the ruling of the Board in an eleven page OPINION that included the following analysis:

On appeal the Appellants do not contest the Board's findings of fact, its reasoning, or its ultimate conclusions of law. They do, however, challenge the Board's power to conduct a full protest hearing once all duly lodged protests have been withdrawn.

\* \* \*

Md. Ann.Code of 1957, Art 2B § 10–302(g) provides:

(1) A protest against the renewal of a license may be filed with the Prince George's County Board of License Commissioners.

(2) If a protest is filed, the license shall not be renewed without a hearing before the Prince George's County Board of License Commissioners.

(3) All protests shall be filed with the Board no later than March 1 of the year in which the license expires.

(4) The protest shall:

(i) Be signed by not less than 10 residents, commercial tenants who are not holders of or applicants for any license issued under this article, or real estate owners in

the immediate vicinity in which the licensed place of business is located;

(ii) Be instituted by the Board of License Commissioners on its own initiative; or

(iii) Be instituted by the municipality in which the licensed place of business is located subsequent to a public hearing being held by that municipality concerning the license renewal protest.

(5) The Board of License Commissioners shall hold a hearing on the protest as in the case of an original application.

\*　　\*　　\*

## *Discussion*

This case appears to be one of first impression. It involves the general question regarding the effect of the Protest Group's withdrawal of its protest—whether the protest hearing was rendered moot by the withdrawal, or whether there remained viable issues for the Board's consideration even after Senate Inn and the Protest Group resolved their dispute. This, in turn, involves a question of standing—whether on the evening of the protest hearing, the Protest Group was the only entity with standing to challenge the renewal of the license. It also involves a question of due process—whether the Board's entertaining challenges from others outside the Protest Group put Senate Inn in a position where it had to argue a case without proper notice.

\*　　\*　　\*

Under the plain language of the statute, it would have been error for the Board not to conduct a full protest hearing once a protest had been filed. "If a protest is filed, the license shall not be renewed without a hearing before the Board of License Commissioners." § 10–302(g)(2).

However, as Appellants point out, the law does not address the effect of the withdrawal of the protest by the sole protestant.

\*　　\*　　\*

In determining the effect of the withdrawal of a protest, it is important to keep in mind that the question of renewal is not a matter between the licensee and the protestant. It is a matter between the licensee and the Board, which, in order to issue or renew a license, must, *inter alia,* determine that the licensee and the licensed premises meet certain requirements. *See* § 10–202(a)(2). Once a protest hearing is instituted, the Board must evaluate the licensee and licensed premises in light of these requirements, and if the requirements are not met, no action by the protestant can serve to waive them.

A protest filed under § 10–302(g)(1) serves as a signal to the Board that the licensed establishment may not be meeting the standards set under § 10–202(a)(2). At that point, the Board is required to look into any possible problems that would require the denial of a renewal. This is done through a hearing, "as in the case of an original application." § 10–302(g)(5). The filing of a protest does not confer any special standing upon the protestant; its effect is solely on the Board, which is then required to make an inquiry by way of hearing.

\* \* \*

In sum, once the protest was filed, the Board was compelled to make further inquiry into the renewal of Senate Inn's license and the withdrawal of the specific protest was a circumstance that did not compel a cessation of Board examination of the application for renewal. Like any protestant under § 10–302(g)(4), the Protest Group was never a party to the case, so the withdrawal of its protest was without effect on the jurisdiction of the Board to conduct the protest hearing. In other words, while timely filing of the protest vested the Board with jurisdiction to hold a protest hearing, the withdrawal of that protest did not divest the Board of its jurisdiction. Despite withdrawal of the protest, the Board was still responsible for making the same § 10–202(a)(2) determinations that it was required to make at the time the protest was filed. Withdrawal of the protest did not render any of these issues moot.

### Standing and Due Process

At a protest hearing, "*any person* shall be heard on either side of the question." § 10–202(a)(1)(iv) (emphasis added). In order words, at a protest hearing the Board may consider evidence submitted by anyone in attendance—not just the licensee and the protestants. Though not every person or group has the standing to file a protest, once a protest is filed, any person may be heard at the protest hearing. The Protest Group's act of withdrawing its protest meant only that the Protest Group itself voluntarily declined to present a case against Senate Inn. Withdrawal of the protest was without effect on the Board's jurisdiction to conduct the hearing, and it was without effect on the right of the others[ ] attending the hearing to be heard on the matter.

A protest hearing is conducted in the same way as is a hearing for original application. § 10–302(g)(5). In a hearing for original application, there is, of course, no protest group, yet the Board hears from interested persons opposing the issuance of the license, even though they do not have standing as protestants. Neither then, is the act of filing a protest a prerequisite for putting on evidence at a protest hearing, and a person or group may be heard at a protest hearing even if that person or group would not have had standing to file a protest.

Once a protest hearing is scheduled, the applicant for renewal is put on notice that it may have to present a case before the Board. Even if, as in this case, the applicant reaches an agreement with all protestants, the applicant should be aware that this may not prevent the protest hearing from going forward, especially if the hearing happens to be attended by others who are opposed to the license's renewal. Those who come to be heard at a protest hearing are not required to notify in advance either the Board or the applicant of their intention to appear. Therefore, the Board's decision to proceed with the protest hearing based on the evidence and arguments of individuals outside the Protest Group was not a violation of due process.

Appellants noted a timely appeal to the Court of Special Appeals, and filed a brief in which they presented three arguments:

1. The Board erred in the interpretation and application of Article 2B, Section 10–302(g) of the Annotated Code of Maryland.

2. The Board's changes to the practices and policies in handling protest hearings should have been revised by adoption of appropriate Rule or Regulation.

3. Other Administrative Agencies permit protests to be withdrawn by agreement of the parties to the case.

Before these arguments were presented to a panel of the Court of Special Appeals,[1] this Court issued a writ of certiorari on its own initiative. 402 Md. 352, 936 A.2d 850 (2007).

## Discussion

### I.

■ Appellants argue that the Board has no authority to hold a renewal hearing if a protest is withdrawn. The Board, not surprisingly, has a different interpretation of the applicable statute. The record shows that the following transpired during the May 10, 2006 hearing:

[BOARD CHAIR]: Two things. One is this protest was made by signatures of ten community members. Is that how this protest was initiated?

[APPELLANTS' COUNSEL]: Well, it was submitted under Hillside Civic Association.

[BOARD CHAIR]: But when the ten community members who submitted this—that these people no longer wish to protest and they submit it to us as a Board and it's really authorized by those people who submitted the request for a protest, then I don't know how you would withdraw a protest otherwise. And the second thing is even if there's been a negotiation, if there's a scheduled hearing for a

---

1. Because no prior appellate decision has been rendered in the case at bar, the designation of the parties is controlled by Md. Rule 8–111(a)(1).

protest and anybody in the county can come and testify with regard to this scheduled hearing for the protest, then anybody who would want to protest can come and offer whatever they want to offer with regard to whether or not this license should be protested or not protested. And so that means that even if you have an agreement with the Hillside Civic Association, there still would be a protest hearing where we would listen to testimony from any resident of Prince George's County with regard to the issues— with regard to the renewal of this particular license.

*    *    *

[BOARD CHAIR]: Now, once that protest hearing is requested and the conditions are met for the protest hearing, then any citizen of Prince George's County can come in and participate in the protest hearing. Now, that group that requested the protest hearing can subsequently say that we no longer want to protest, but this document doesn't even really say that. I mean, in all honesty, it just establishes conditions that it would expect the licensee to maintain if, in fact, the licensee has a license. But it doesn't even say that it supports the licensee request for a new license. It just says that this is what it—now, I understand the second part of that and the second part of it, they seem to be holding true. They're not protesting.

It is well settled that "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." *Marzullo v. Kahl,* 366 Md. 158, 172, 783 A.2d 169, 177 (2001). In the case at bar, the Board's interpretation of § 10–302(g)(2)—"if a protest is filed, we must hold a hearing"—is entirely consistent with the words of the statute.

It is also well settled that "[w]e neither add nor delete words to a clear and unambiguous statute[.]" *Taylor v. NationsBank,* 365 Md. 166, 181, 776 A.2d 645, 654 (2001). To accept appellants' argument, we would be adding the words "unless the protest is withdrawn" to § 10–302(g)(2). Moreover, as pointed out by the Board Chair and by the Circuit

Court, the protest against renewal was filed by twelve citizens rather than by the Hillside Civic Association.[2] Under these circumstances, appellants were not entitled to a renewal of their license on the ground that they had settled their differences with the members of the Hillside Civic Association.

## II.

█ Appellants next argue that they should have been granted a renewal of their application on the ground that the Board's denial of the application resulted from (in the words of appellants' brief) "changes to the practices and policies in handling protest hearings [that required] adoption of appropriate Rule[s] or Regulation[s]." From our review of the record, however, we agree with the Board's assertion that (in the words of its brief) "[t]he Board has never adopted a policy, either formal or informal, obviating the need for a statutorily mandated hearing on a protested renewal for any reason."

## III.

█ According to appellants, if the Administrative Procedure Act were applicable to the case at bar, (in the words of appellants' brief) "administrative agencies would declare the protest hearing before the Agency to be moot upon withdrawal of the protest by Hillside Civic Association." The Administrative Procedure Act,[3] however, is not applicable to proceed-

---

**2.** Before the Board, appellants had the opportunity to—but did not—challenge the validity of the protest on the ground that the persons who signed the protest were not authorized to do so by § 10–302(g)(4)(i), which requires that the protest "[b]e signed by not less than 10 residents, commercial tenants who are not holders of or applicants for any license issued under this article, or real estate owners in the immediate vicinity in which the licensed place of business is located[.]" Because appellants did not raise this issue before the Board, this issue could not be raised for the first time during judicial review. *MVA v. Weller,* 390 Md. 115, 128–29, 887 A.2d 1042, 1050 (2005).

**3.** See Administrative Procedure Act, Md.Code (2004, 2006 Supp.) State Gov't Article § § 10–201 0 10–206.

**240**

ings before the liquor boards. *Valentine v. Board of License Commissioners*, 291 Md. 523, 530, 435 A.2d 459, 463 (1981).

**JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.**