READ DRUG & CHEMICAL COMPANY *v.* JAMES
Y. CLAYPOOLE, Clerk, et al.

[No. 25, October Term, 1933.]

*Decided June 21st, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Charles Markell* and *Randolph Barton, Jr.,* with whom were *Piper, Carey & Hall, Barton, Wilmer, Ambler & Barton,* and *Cook & Markell,* on the brief, for the appellant.

*William Preston Lane, Jr., Attorney General,* and *William L. Henderson, Assistant Attorney General,* for the appellees.

DIGGES, J., delivered the opinion of the Court.

This appeal involves the construction of chapter 542 of the Acts of the General Assembly of Maryland of 1933, approved by the Governor on April 21st, 1933, which provides:

"AN ACT to add a new section to Article 56 of the Annotated Code of Maryland (1924 Edition), title 'Licenses,' sub-title 'Traders,' said new section to be known as Section 65A and to follow immediately after Section 65 of said Article, imposing additional annual license fees on every person, firm, corporation, association or co-partnership opening, establishing, operating or maintaining two or more mercantile establishments.

"SECTION 1. *Be it enacted by the General Assembly of Maryland,* That a new section be and it is hereby added to Article 56 of the Annotated Code of Maryland (1924 Edition), title 'Licenses,' sub-title 'Traders,' said new section to be known as Section 65A, to follow immediately after Section 65 of said Article, and to read as follows:

"65A. Every person, firm, corporation, association or co-partnership opening, establishing, operating or

maintaining two or more stores or mercantile establishments where goods, wares and/or merchandise are offered for sale at retail within this State, under the same general management, supervision, or ownership, shall pay the license fees hereinafter prescribed for the privilege of opening, establishing, operating or maintaining such stores or mercantile establishments. The license fee herein prescribed shall be paid annually, and shall be in addition to the license fee prescribed in Sections 45 to 65, both inclusive of this Article.

"The license fees herein prescribed shall be as follows:

"(1) Upon two stores or more, but not to exceed five stores, the annual license fee shall be five dollars for each such store;

"(2) Upon each store in excess of five, but not to exceed ten, the annual license fee shall be twenty dollars for each such additional store;

"(3) Upon each store in excess of ten, but not to exceed twenty, the annual license fee shall be one hundred dollars for each such additional store;

"(4) Upon each store in excess of twenty, the annual license fee shall be one hundred and fifty dollars for each such additional store.

"The term 'store' or mercantile establishments as used herein shall not be construed to include automobile service stations at which the principal business is the sale or distribution of gasoline and motor fuel.

"SEC. 2. *And be it further enacted,* That this Act shall take effect June 1, 1933."

There are two questions upon which this court is asked to pass:

First: Is the license fee or occupational tax provided for in the act required to be paid on the 1st day of June, 1933, for eleven-twelfths of a year, said term being from June 1st, 1933, to May 1st, 1934; or, to be more exact, does the act require holders of trader's licenses which have been issued

as of May 1st, 1933, and paid for, and which do not expire until May 1st, 1934, to obtain additional licenses and pay additional fees for the same privilege already licensed and paid for?

Second: Does the act require that in Baltimore City and each of the counties the additional license fees imposed, whenever payable, upon the stores within the limits of the city or county for which licenses are there issued, be computed on the basis of all the stores in the state for which licenses may be issued in every county and Baltimore City; or, expressing this question in another way, is the additional license fee based upon the number of stores operated under one ownership, management, and control in the whole state, or is it to be computed upon the construction that each county of the state and Baltimore City constitutes a separate and distinct entity for the purpose of computing the fee?

These questions are raised on this appeal by a class bill filed by the appellant, in its own behalf as well as on behalf of all others similarly situated who shall come in and become parties to the suit, against the clerk of the Court of Common Pleas of Baltimore City, the comptroller of the state treasury, and the various inspectors and assistant inspectors of state licenses whose authority and duty it is to compel observance of the license laws of the state. The defendants filed an answer which admits the facts but denies the conclusions of law contended for by the complainant, and which, in practical effect, amounts to a demurrer to the bill. The bill prayed a permanent injunction against the state officials and the clerk of the court, enforcing the act according to the construction placed upon it by the Attorney General of the State, which construction is that the additional fee is collectible for a proportionate part of the year, beginning June 1st, 1933, and ending May 1st, 1934, and that, in computing the fee, the number of stores owned, controlled, managed, and operated by one individual, corporation, or copartnership in the state as a whole shall be used as a basis for the calculation. The case was heard on bill and answer; and the chan-

cellor by decree dismissed the bill, thereby upholding the contention of the State. The appeal is from that decree.

We are not called upon to consider the validity of this legislation from a constitutional standpoint, as objection on that ground to similar legislation has been overruled by the Supreme Court of the United States in the case of *State Board of Tax Commrs. of Indiana v. Jackson*, 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248. We are not asked to determine the question of whether or not the Legislature had the constitutional power to pass the act, but to decide what the act, as passed, means. In approaching this question, its proper solution is largely controlled by determining whether the act is isolated and independent legislation, or is a component part of the body of legislation now in force, as codified in article 56 of the Code. The title and the enacting clause make it apparent that it was enacted as an addition to the provisions of article 56, and to become an integral part of its provisions as a whole; the language being "that a new section be and it is hereby added to article 56 of the Annotated Code of Maryland (1924 Edition), title 'Licenses,' sub-title 'Traders,' said new section to be known as section 65A, to follow immediately after section 65 of said article, and to read as follows," section 65A then providing that all persons, firms, corporations, associations or copartnerships which come within the description therein contained "shall pay the license fees hereinafter prescribed for the privilege of opening, establishing, operating or maintaining such stores or mercantile establishments. The license fee herein prescribed shall be paid annually, and shall be in addition to the license fee prescribed in sections 45 to 65, both inclusive of this article."

There is nothing contained in section 65A, or in any other part of chapter 542 of the Acts of 1933, providing for the obtention of a trader's license. Neither does it independently make provision by whom and in what manner the collection is to be made, or for the enforcement of the penalties for failure to obtain said license or pay the fees prescribed. It simply provides that, if there are two or more stores or mer-

cantile establishments where goods, wares and merchandise are offered for sale at retail within this state, under the same general management, supervision or ownership, they shall pay additional fees to those prescribed by sections 45 to 65 of article 56, which additional fees are exacted because of the nature and method of ownership and operation. The time of the act taking effect, according to its terms, is June 1st, 1933. The appellant, in order to conduct a retail trader's business, was and still is required to obtain a license and pay certain fees, as prescribed by said sections of article 56, such license to be an annual license and dated May 1st of each year, which entitled the holder thereof to conduct business for the period of one year from the date of license; all such licenses being null and void on the 1st of May next succeeding the date of their issue. All licenses shall be granted by the clerks of the circuit courts for the counties and the clerk of the Court of Common Pleas in the City of Baltimore, except where a different mode is especially provided, but they are expressly forbidden to date any such license other than the 1st of May in each and every year, except when the trader engages in business in any other month subsequent to May 1st, when such license shall be issued from such month and a ratable sum shall be charged therefor. Article 56, sec. 1. It is therefore clear that section 65A forms a part of article 56, comprising one entire system, and must be construed together. *Spielman v. State,* 27 Md. 525.

The appellant here applied for and received a license to conduct a retail trader's business on May 17th, 1933, prior to the date upon which the act of 1933 went into effect. Under such license, having paid the fee then required, it was entitled to operate by virtue of such license until May 1st, 1934. The fees provided for by the act of 1933, effective June 1st, 1933, are declared to be in addition to the fees required by the other sections of article 56. Upon the payment of these additional fees, the applicant is given no additional license; that is to say, he can do nothing which he might not have done under the license previously secured.

It seems clear, reading together and construing as a whole article 56, that trader's license fees are collected annually, and that the year is from May 1st to May 1st; that is, that the taxing year for such an occupational tax begins on May 1st and ends on the following May 1st; and this seems to be the policy and intent of the State as expressed in its legislation on this subject. There is no question that the Legislature had the power to lay an additional occupational tax or license fee to take effect during an existing tax year; and, if by apt and unequivocal language this intention had been definitely expressed, we would have no difficulty in giving effect thereto. There is no such definite and unequivocal language employed in the act now under consideration. The general rule of construction is that a legislative act imposing an additional tax, becoming effective during a current tax year, does not become operative until the beginning of the next or succeeding tax year. Especially ought this to be true when the applicant has paid the required fees and been issued a license to transact business during that tax year, as is the case now presented. Such a rule seems to us to be fair and reasonable; and, where the legislative language is ambiguous, open to two interpretations, one of which would be in accord with a fair and reasonable intention, and the other opposed thereto, we feel constrained to adopt the former. This view is strengthened by the fact that the Legislature did not provide for the return to the applicant of the fees already paid, in cases where the applicant, by reason of the largely increased fee, would decide to discontinue business rather than pay the additional fee. Such cases might not be numerous, but they could and doubtless would frequently occur, where the additional fee was relatively large or out of proportion to the amount originally paid.

While the act under consideration is the first by which the Legislature undertook to exact an additional or larger license fee from what are popularly known as "chain stores," the view which we adopt is in harmony with the administrative policy of the State. In 1916 (chapter 704) the Legislature generally revised the license law, in a number of instances

increasing the license fee over and above that theretofore required for conducting the same business or occupation. The effective date of that act, like the present, was June 1st succeeding its passage, and the administrative officers of the State were advised by the then Attorney General that the payment of the additional fees provided by that act could not be required until the 1st of May subsequent to the effective date of the act; in other words, that, while the act became effective the 1st day of June, 1916, its provisions did not become operative until the 1st day of May, 1917. This interpretation was made by the State's highest law officer, and was followed by its administrative officials. By the law as it stood prior to the act of 1916, there was no specific license required for the exhibition of moving pictures, but the practice had been for such operators to obtain a license and pay the fee theretofore provided for "stage performers," which fee was fifty dollars for a year or two dollars for each exhibition (see article 56, section 128). The fee prescribed by the act of 1916 for such license was very much in excess of that required for "stage performers"; and it was suggested that it was a new licensing subject and not an additional license to one which had theretofore been required. The opinion of the Attorney General was sought and given to the effect that if those engaged in the exhibition of moving pictures had in good faith taken out the license theretofore required of them under the provisions of the section which licensed "stage performers," no other or additional fee should be required of them until the expiration of their then existing license. This was an official interpretation and the adoption of an administrative construction in a case very analogous to, if not identical with, the one now being considered; and, while courts are not bound by an Attorney General's opinion, or an administrative construction in conformity therewith, yet, when the meaning of the legislative language is not entirely clear, such legal interpretation and administrative construction should be given great consideration in determining the legislative intent. The Legislature knew, or must be pre-

sumed to have known, of this interpretation and administrative construction at the time of the passage of the act of 1933, and must be held to have employed the language it did with that interpretation in view. More particularly would this seem to be true in the present case, because the Attorney General who interpreted the act of 1916 is the same individual who, as Governor, approved the act of 1933. Our conclusion on this point, for the reasons stated, is that the appellant and those similarly situated are not required to pay the additional license fees provided for by the act of 1933 until May 1st, 1934; or succinctly stated, that the provisions of the act of 1933, now under consideration, do not become operative until May 1st, 1934.

Taking up the second question, namely, the proper method of calculation of the fees to be collected at the time hereinbefore determined, we conclude that the legislative intent is to include all of the stores or mercantile establishments opened, operated, or maintained under the same general management, supervision, or ownership in the state as a whole and all its parts, as constituting one chain, in arriving at the proper sum to be paid for the privilege. The object and purpose of the legislation is to exact an additional license fee for the privilege of engaging in the "chain store" business, by reason of the advantages such a method of conducting business has over the individual operator, thereby rendering more equal competition and also deriving additional revenue for the State. It is evident that the Legislature concluded that, as the number of stores or mercantile establishments in the chain increased there was a corresponding increase in the advantages secured. This is demonstrated by the stepping up of the additional license fee as the number of stores in the chain increase. The act provides for a graduated increase, dependent upon the number of stores operated. Upon two stores or more, but not to exceed five, the annual fee is $5 for each store; in excess of five, but not to exceed ten, $20 for each additional store; in excess of ten but not to exceed twenty, $100 for each additional store; and, on all in excess of twenty, $150 for each such additional store.

The contention of the appellant is that, instead of using the state as a whole in the formation of the chain of which each store or mercantile establishment is one link, the construction should be such as to permit the establishment by one owner of twenty-four chains, or one in each political subdivision of the state. This contention is based upon the argument that the collection of the license fee is required to be made by twenty-four different officials, one in each political subdivision of the state, and the difficulty of a clerk in one of the counties or Baltimore City in ascertaining the total number of stores operated by the applicant throughout the whole state. We do not think this view can be supported. While the duty of collecting is made that of the clerk of the circuit court of the several counties and the clerk of the Court of Common Pleas in Baltimore City, yet the fees belong exclusively to the State; and the Legislature has designated these local officials as agents of the State for the purpose of making the collection, and pays them a commission upon the amounts so collected, for the service thus rendered the State. We do not think there is any difficulty in ascertaining the number of establishments operated by one owner in the state at large. Under the provisions of section 44 of article 56, applicants for trader's licenses are required to apply to the clerk for such license, under oath, and to answer such questions as may be pertinent. The amount of the old fee is based upon the average amount of merchandise on hand; and the clerk to whom the application is made procures that information by answers of the applicant under oath. The information required as to the number of stores operated by the applicant in the state can with equal facility be obtained in the same manner. This would be the manner of acquiring such information whether we consider the political subdivisions of the state as units for the chain or the state as a whole; because, when applied to Baltimore City, it would be practically as difficult for the clerk of the Court of Common Pleas to obtain by personal inspection the number operated in Baltimore City as it would be throughout the state. In either case he obtains this information from the

applicant, which entirely obviates the necessity for personal investigation on the part of the clerk. It might be suggested that the applicant would not give this information truthfully; but, if he does not, the penalties provided for operation without taking out the required license would apply in full force, and we can see no practical difficulty on this account. Keeping in mind the object and purpose of the legislation, and giving it a construction which operates uniformly and equally upon all those similarly situated, a construction which would hold that every store operated throughout the state constitutes a link in the chain becomes obvious and compelling. Any other construction might, and probably would, result in great inequalities. To illustrate: Two chain store organizations each operate within the state fifty stores; chain A having all of its stores located in Baltimore City, and chain B having five of its stores located in each of ten different counties. In the first case the fee required to be paid would be $5,625, as compared to a $250 fee in the second case. A construction which would or might result in such unequal and unreasonable discrimination cannot be adopted. It is inconceivable that the Legislature could have intended such a result. We conclude that, in the calculation of the fee required by the statute to be paid by each chain store operator, all of their stores operated in the state, without regard to location, must be included as being parts or links in one chain.

The decree and order dismissing the bill of complaint must be reversed, and the case remanded in order that a decree may be passed in conformity with the views herein expressed.

*Decree reversed, and case remanded.*