Argued March 21; affirmed May 9; rehearing denied June 1, 1944

# NORTHWEST AMUSEMENT CO. *v* GALLOWAY
### ET AL.

(148 P. (2d) 931)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*George Neuner*, Attorney General, and *James G. Smith* and *George William Neuner*, Assistant Attorneys General, for appellants.

*Paul R. Harris*, of Portland, for respondent.

BAILEY, C. J. This suit was instituted by Northwest Amusement Company, a corporation, against the individual members of the state tax commission of Oregon, the sheriff of Multnomah county and the chief of police of the city of Portland, Oregon, for a declaration as to whether the tax imposed by chapter 220, Oregon Laws 1943, was collectible for the period from June 9, 1943, to July 1, 1943, for the privilege of operating or displaying for operation during that time coin-in-the-slot devices subject to the act.

The complaint alleges that the plaintiff owns and operates numerous coin-in-the-slot mechanical devices, some of which are designed to provide music, and others, amusement; and that the defendants have demanded payment of the tax for the period mentioned on all such mechanical devices and will, unless restrained by order of the court, seize such property as contraband and "forfeit the same to the state of Oregon". A general demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of suit was filed on behalf of all the defendants and was overruled. Thereupon the members of the state tax commission filed their answer, in which they joined with the plaintiff in requesting a determination and

declaration as to whether the tax imposed by chapter 220, *supra,* applied to the period between June 9 and July 1, 1943.

Upon the trial the circuit court entered a decree declaring that under the provisions of chapter 220, *supra,* "no tax is imposed or collectible on any mechanical game or musical device displayed or operated during the period from June 9, 1943, to and including June 30, 1943," enjoining and restraining the defendant members of the state tax commission from "claiming or asserting that plaintiff is subject under the provisions of said chapter 220 to any liability for taxes by reason of the display or operation of any of said mechanical games or musical devices" during the period mentioned, and dismissing the suit as to the other two defendants. From that decree the state tax commissioners, hereinafter to be mentioned as the defendants, have appealed.

In the cases of *Fox v. Galloway et al.* and *Sedlock v. Galloway et al.,* today decided by this court, we have referred to and quoted extensively from chapter 220, Oregon Laws 1943, and shall refer herein only to the provisions of chapter 220 which bear directly upon the question now before us. Section I of the act describes the tax therein imposed as a "privilege tax" and further as an "annual tax." Section 3 provides that, "The tax year, for the purposes of this act, shall begin on July first and end on June 30." Under § 7 of the act it is provided that all property displayed or operated contrary to or in violation of any provision of the act "hereby is declared to be contraband property, and the same shall, on and after July 1, 1943, be forfeit to the state of Oregon and as such subject to immediate seizure". This last-mentioned section has,

together with § 8 of the act, been declared by the opinion in the Fox and Sedlock cases to be invalid and unenforcible, and it is here mentioned merely in connection with the other provisions of the act, for the purpose of assisting in ascertaining the intention of the legislature as to the time when the tax should begin to be imposed.

■ The 1943 legislative assembly adjourned on March 10 of that year, and according to § 28 of article IV of the state constitution chapter 220, *supra,* would take effect ninety days thereafter, on June 9, 1943. After that date it would be unlawful for any one to operate any of the mechanical devices subject to the tax until the tax had been paid, unless the legislature evidenced an intention that the act should not become operative until a later date.

The defendants argue that inasmuch as the state tax commission by § 13 of the act is authorized to promulgate rules and regulations for the adminstration and enforcement of the act, the commission had power to pro-rate the tax covering the period from June 9 to 30, inclusive, 1943, and that it accordingly had promulgated rules so pro-rating the tax. They admit that it would be unjust to require payment of a full year's tax for part of the month of June, 1943, and at least impliedly they concede that to require the payment of the annual tax in its entirety for that period would be to construe the act retrospectively and to give it a retroactive effect.

■ Authority given by the legislature to the tax commission to promulgate rules and regulations does not empower it to pro-rate the tax. That is a legislative function. The defendants, in this connection, rely upon

42 Am. Jur., Public Administrative Law, § 53, page 359, which, however, does not support their contention that the commission has power to pro-rate the tax. In *Hart, Arbour & Co. v. Beauregard,* 22 La. Ann. 238, it was asserted by the plaintiffs that they were liable for a license tax for only that part of the year during which they were engaged in business, to-wit, November 15 to December 31, 1869. The supreme court of Louisiana held adversely to that contention, saying in its opinion:

> "The license is fixed at a certain sum for the year. Section three of the act says: 'There shall be levied and collected an annual amount as a license,' and no provision is made for a *pro rata* license. No authority is given to the tax collector to demand or recover less than the amount fixed by the law. Nor is this a violation of the principle of uniformity established by the constitution. The amount required of every one in the same occupation is the same per annum, and the time during which the business is conducted is a matter entirely with the person taking out the license. The state prescribes that a certain sum per annum shall be paid by each, who thereby secures the right for the calendar year. Whether he closes before the end of the year or does not begin business until the year has advanced, rests with him."

 The legislature provided in § 3 of chapter 220, *supra,* that the tax year "shall begin on July first". This language, in view of the fact that the exaction is referred to as an annual tax, and in view also of the provision that property on which the tax had not been paid should on and after July 1, 1943, be forfeited to the state of Oregon, would indicate that the legislature did not intend that the tax should be imposed until July 1 subsequent to the passage of the

act. It is said in *Read Drug & Chemical Co. v. Claypoole,* 165 Md. 250, 166 A. 742, that:

" . . . The general rule of construction is that a legislative act imposing an additional tax becoming effective during the current tax year, does not become operative until the beginning of the next or succeeding tax year."

It is our conclusion, upon consideration of the entire act, that the legislature intended the tax thereby imposed to become effective on and after July 1, 1943, and not prior to that date. The decree appealed from is therefore affirmed.