620 A.2d 953

## BOARD OF LICENSE COMMISSIONERS OF CARROLL COUNTY

v.

## PIZZA HUT OF MARYLAND, INC., et al.

**No. 956, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Feb. 26, 1993.

Charles W. Thompson, Jr., County Atty. (Laurell E. Taylor, Asst. County Atty., on the brief), Westminster, for appellant.

William B. Sulany (Amber F. Dahlgreen and Dulany & Leahy, on the brief), Westminster, for appellees.

Argued before ROSALYN B. BELL, WENNER and HARRELL, JJ.

ROSALYN B. BELL, Judge.

Appellant, the Board of License Commissioners of Carroll County (Board), filed suit in the Circuit Court for Carroll County, seeking a declaratory judgment, pursuant to the Maryland Uniform Declaratory Judgments Act, Md.Cts. & Jud.Proc.Code Ann. §§ 3–401 through 3–415 (1974, 1989 Repl.Vol.), that all of the Pizza Hut restaurants located in Carroll County are "chain stores" within the meaning of Md.Code Ann. Art. 2B, § 41(a–1) (1959, 1990 Repl.Vol., 1992 Cum.Supp.).[1] The complaint requested further that the

---

1. Article 2B, § 41(a–1) provides:
 *"Chain stores, supermarkets or discount houses.*—A Class A, B, or D beer license, beer and wine license, or beer, wine, and liquor license, except by way of renewal, may not be granted, transferred,

court declare, under the statute, that the liquor licenses of the Carroll County Pizza Hut restaurants were invalid.

Appellees, Pizza Hut of Maryland, Inc., and others [2] (Pizza Hut), moved for summary judgment, asking the circuit court to rule as a matter of law that the term "chain stores," used in Art. 2B, § 41(a–1), does not include restaurants. The Board filed a cross-motion for summary judgment. After denying the parties' motions for summary judgment, the circuit court set the case for trial and, on May 13, 1992, issued a Memorandum Order declaring that Art. 2B, § 41(a–1) does not apply to the Pizza Huts in Carroll County because they are not "stores."

The Board has appealed, contending that the establishments operated in Carroll County under the management and direction of Pizza Hut, all of which are licensed as "chain stores" under Md.Code Ann. Art. 56, § 57 (1957, 1990 Repl.Vol., 1991 Cum.Supp.),[3] are "chain stores" within

---

or issued to, or for use in conjunction with, or upon the premises of any business establishment of the type commonly known as chain stores, supermarkets, or discount houses. This subsection does not apply to or affect any business establishment already holding such a license or the possibility of such licensee having the license transferred to a similar type of business establishment. Discount houses do not include licensees who sell at discount prices."

**2.** The other named appellees are corporate franchisees Minster, Inc. (Westminster Pizza Hut), Elsco, Inc. (Eldersburg Pizza Hut), Parr's Ridge, Inc. (Mt. Airy Pizza Hut), Stead, Inc. (Hampstead), individual liquor license holders Sherrod Schulze, Elizabeth Kurtz, Helen M. Irons (Eldersburg restaurant), Debra Schulze, Gloria Fitzgerald (Mt. Airy restaurant), Grace Willias, Helen Walsh, Sherry Tracy (Westminster restaurant), and the sole stockholder of Stead, Inc. (Hampstead restaurant), Gregory G. Hendrickson.

**3.** Article 56, § 57, which has now been recodified in Md.Bus.Reg.Code Ann. § 17–1809 (1992), provided in pertinent part:
"(a) Every person, firm, corporation, association or copartnership opening, establishing, operating or maintaining two or more stores or mercantile establishments where goods, wares and/or merchandise are offered for sale at retail within this State, under the same general management, supervision, or ownership, shall pay the license fees hereinafter prescribed for the privilege of opening, establishing, operating or maintaining such stores or mercantile establishments. The license fee herein prescribed shall be paid annually,

the proscription of Art. 2B, § 41(a–1). Finding no error, we affirm and explain.

## THE FACTS

Pizza Hut of Maryland, Inc., a Kansas corporation, was granted an exclusive franchise by Pizza Hut, Inc., a Dela-

---

and shall be in addition to the license fee prescribed in §§ 35 to 55, both inclusive, of this article. Except in Baltimore City, the license fees herein prescribed shall be as follows:

"(1) Upon two stores or more but not to exceed five stores, the annual license fee shall be five dollars for each such store;

"(2) Upon each store in excess of five, but not to exceed ten, the annual license fee shall be twenty dollars for each such additional store;

"(3) Upon each store in excess of ten, but not to exceed twenty, the annual license fee shall be one hundred dollars for each such additional store;

"(4) Upon each store in excess of twenty, the annual license fee shall be one hundred and fifty dollars for each such additional store. The term 'store' or mercantile establishments as used herein shall not be construed to include automobile service stations at which the principal business is the sale or distribution of gasoline and motor fuel."

. Maryland Bus.Reg.Code Ann. § 17–1809 now provides:

"(a) *Scope of section.*—This section does not apply to an automobile service station where the principal business is the sale or distribution of motor fuel.

"(b) *License fees.*—(1) An applicant for a chain store license shall pay to the clerk a license fee based on the value of the applicant's stock-in-trade under § 17–1808 of this subtitle and an additional license fee.

"(2) In a county other than Baltimore City or Cecil County, the additional license fee is:

(i) $5 for each store for 2 to 5 stores;
(ii) $20 for each store for 6 to 10 stores;
(iii) $100 for each store for 11 to 20 stores; or
(iv) $150 for each store for more than 20 stores.

"(3) In Baltimore City, the additional license fee is:

(i) $12 for each store for 2 to 5 stores;
(ii) $50 for each store for 6 to 10 stores;
(iii) $250 for each store for 11 to 20 stores; or
(iv) $375 for each store for more than 20 stores.

"(4) In Cecil County, the additional license fee is:

(i) $10 for each store for 2 to 5 stores;
(ii) $30 for each store for 6 to 10 stores;
(iii) $100 for each store for 11 to 20 stores; and
(iv) $300 for each store for more than 20 stores."

ware corporation, to operate Pizza Hut restaurants in Baltimore City, Anne Arundel County, Baltimore County, Carroll County, Cecil County, Harford County, and Howard County. In turn, Pizza Hut of Maryland, Inc. granted licenses to the other appellees to operate the Pizza Huts in question in Carroll County.

By virtue of the parties' trial stipulation that all of the Carroll County Pizza Huts are part of a "chain" of restaurants, we are not called upon to scrutinize the business structure and the relationships between appellees as that might otherwise bear on the issue decided by the trial court and which is now before us.

Three of the Carroll County Pizza Huts, located in Westminster, Eldersburg and Mount Airy, have Class B—Beer, Wine and Liquor licenses issued by the Board. Pizza Hut restaurants serve food to the public, including pizza and other menu items. To be issued a Class B liquor license in Carroll County, a restaurant must operate in facilities having an assessed value of not less than $50,000 and must generate 41 percent of its average total monthly receipts from the sale of food to comply with Md.Code Ann. Art. 2B, § 19(h)(1)(iii) (1959, 1990 Repl.Vol., 1992 Cum.Supp.), and Rule 21, Rules and Regulations of the Board of License Commissioners for Carroll County (June 11, 1991).

The first of the three existing Class B liquor licenses involved in this case was issued in 1972 and has been renewed each year since then. The second was issued in 1976 and has also been renewed each year. The third license was issued in 1986 and has been renewed each year, as well.

An application for a fourth Class B—Beer, Wine, and Liquor license was filed in 1989 by Gregory Hendrickson on behalf of Stead, Inc. for use at Pizza Hut in Hampstead, Maryland. The Board held a hearing on the application in September 1989. The Board then filed the declaratory judgment suit. The parties agreed that the court could stay further proceedings in the action while the General Assem-

bly considered House Bill 633, introduced during the 1990 legislative session, designed to authorize chain stores in Carroll County to apply for and receive Class B liquor licenses. When this legislation failed to pass the General Assembly, Pizza Hut answered the suit against it and both parties filed their motions for summary judgment.

Subsequently, the Board discovered that Pizza Hut was officially listed as a "chain store" by the Comptroller of the Treasury [4] and that Pizza Hut had applied for and obtained chain store licenses from the Clerk of the Circuit Court for Carroll County. Again, the Board filed a Motion for Summary Judgment, and again the court denied it.

The court held a merits hearing on May 4, 1992. The case then concluded with the court's ruling, in a Memorandum Opinion and Order, that the prohibition in Art. 2B, § 41(a–1), against issuing Class B (Restaurant) licenses to chain stores, does not prohibit issuance of such licenses to restaurant chains. This appeal followed.

## CHAIN STORES

■ As a preliminary matter, it must be determined whether the Carroll County Pizza Huts are "chain stores" for purposes of Art. 2B, § 41(a–1).

The term "chain stores" is defined as a "[n]umber of stores under common name, ownership and management; normally selling some general line of merchandise or products." *Black's Law Dictionary* 208 (5th Ed.1979). A chain includes a person, firm, corporation, association, or copartnership that opens, establishes, operates, or maintains two or more stores or mercantile establishments where goods, wares and/or merchandise are offered for sale at retail under the same general management, supervision, or ownership. Maryland Law Encyclopedia, *Licenses* § 35 (1986). Thus, a chain store is simply one selling merchandise that is

---

**4.** The Comptroller provides no definition of "chain store," but a chain store license is required where two or more establishments are operated in accordance with Md.Bus.Reg.Code Ann. § 17–1809.

owned and managed by the same body as that of other stores selling merchandise.

The issue of whether a store belongs to a "chain" appears most often in the context of taxation. Pizza Hut relies on *Pizza Hut, Inc. v. Dolan*, 619 P.2d 508, 509 (Col.Ct.App. 1980), for the proposition that Pizza Huts are restaurants, not stores, for licensing purposes. *Dolan*, a Colorado case, dealt with this issue by differentiating between the purpose of restaurants and stores. The Colorado Court stated:

"The difference between a store or mercantile establishment and a restaurant is that the restaurant sells a service; the sale of food is merely an incidental part of that service. The distinction is well stated in *State Tax Commission v. Gay–Teague Realty Co.*, 237 Ala. 133, 185 So. 739 (1938).

'But we do not think that a restaurant is a mercantile establishment, though it is a place where food is prepared and sold for consumption then and there. The restaurateur as a rule does not sell the food in the form in which he buys it. He adds a service and provides facilities for its consumption, which distinguish his place from that of a store or mercantile establishment. The distinction being that in the latter the sale is ordinarily made of the article in the form in which it is bought by the merchant, and not to be then consumed. While they are both places for sales of personal property in a certain sense, each is distinctive in name and substance from the other, and is so well understood.' "

*Dolan*, 619 P.2d at 509. The Colorado Court went on to conclude that the Pizza Hut outlets were restaurants, not stores or mercantile establishments. The Court stated that even the sale of cigarettes, mints, and salad dressings, which made up one percent of Pizza Hut's total net sales, did not change the result that the Pizza Huts should not be considered "stores" for the purpose of taxation.

Under the holding in *Dolan*, restaurants can be distinguished from entities encompassed under the broad definition of "chain stores" provided by *Black's Law Dictionary*,

*supra.* While a group of restaurants may share a common name, ownership, and management, they also provide services, which make them unique from other groups of stores, such as supermarkets. Thus, for purposes of definition, we need not concern ourselves with the broad definition provided by *Black's Law Dictionary, supra.*

 The Court of Appeals in *Fair Lanes, Inc. v. Comptroller of the Treasury,* 265 Md. 361, 369–370, 289 A.2d 595 (1972), discussed the appropriateness of a tax on chain stores, including restaurants. The Court looked at the advantages that chain stores enjoy and concluded that the opportunities and powers the chain has as one company are greater than those available to individual businesses. *Fair Lanes, Inc.,* 265 Md. at 369, 289 A.2d 595. The Court also looked at certain factors that were more specifically set out in *State Board of Tax Commissioners of Indiana v. Jackson,* 283 U.S. 527, 534, 51 S.Ct. 540, 542, 75 L.Ed. 1248 (1931).

In *Jackson,* the Court investigated the difference between chain stores and independently owned units. It noted that chain stores have inherent qualities that give them advantages over individual units. These qualities include:

"quantity buying, which involves the application of the mass process to distribution, comparable to the mass method used in production; buying for cash and obtaining the advantage of a cash discount; skill in buying, so as not to overbuy, and at the same time keep the stores stocked with products suitable in size, style and quality for the neighborhood customers who patronize them; warehousing of goods and distributing from a single warehouse to numerous stores; abundant supply of capital, whereby advantage may be taken of opportunities for establishment of new units; a pricing and sales policy different from that of the individual store, involving slightly lower prices; a greater turn-over, and constant analysis of a turn-over to ascertain relative profits on varying items; unified, and therefore cheaper and better

advertising for the entire chain in a given locality; standard forms of display for the promotion of sales; superior management and method; concentration of management in the special lines of goods handled by the chain; special accounting methods; standardization of store management, sales policies and goods sold."

*Jackson,* 283 U.S. at 534–35, 51 S.Ct. at 542. A store in a chain under one owner, management scheme, and control can be run more efficiently than a single, independent store. *Jackson,* 283 U.S. at 534–535, 51 S.Ct. at 542. Additionally, the opportunities and powers of a chain store become greater with the growth of the number of units maintained.

As a result, in *Fair Lanes, Inc.,* the Court held that the State taxing authority may impose a chain store tax on companies that have more than one store in the State. The Court in *Fair Lanes, Inc.* 265 Md. at 370, 289 A.2d 595, quoting *Read Drug & Chemical Co. v. Claypoole,* 165 Md. 250, 258, 166 A. 742 (1933), stated that the purpose of the tax is

" 'to exact an additional license fee for the privilege of engaging in the "chain store" business, by reason of the advantages such a method of conducting business has over the individual operator, thereby rendering more equal competition and also deriving additional revenue for the State. It is evident that the Legislature concluded that, as the number of stores or mercantile establishments in the chain increased there was a corresponding increase in the advantages secured.' "

Thus, all the Pizza Hut restaurants in Maryland must obtain a trader's license, a restaurant license, and a chain store license in order to conduct business. We do not, however, conclude that the payment of a chain store license fee for tax purposes is dispositive with respect to liquor license status.

Even if the taxing statute and the licensing statute are taken *in pari materia,* we reach the same result. *See Smith v. Higinbothom,* 187 Md. 115, 131–32, 48 A.2d 754

(1946). In *State v. Loscomb,* 291 Md. 424, 432, 435 A.2d 764 (1981), the Court of Appeals stated:

> "It is a general rule of statutory construction that statutes that deal with the same subject matter, share a common purpose, and form part of the same general system are in *pari materia* and must be construed harmoniously in order to give full effect to each enactment."

For example, there is nothing in conflict between the Workers' Compensation Act and the Wrongful Death Act and, thus, the two Acts must be construed together. *See Knoche v. Cox,* 282 Md. 447, 453 n. 2, 385 A.2d 1179 (1978).

In the instant case, however, the scope and aim of the two statutes are distinct. The taxing statute, which was originally passed in 1933, appeared in Art. 56, § 57 and now appears in Md.Bus.Reg.Code Ann. § 17–1809. Its purpose, set forth in *Fair Lanes, Inc.,* 265 Md. at 370, 289 A.2d 595, is to raise revenue and exact an additional license fee for the privilege of engaging in the chain store business. The licensing statute, passed in 1962, is found in Art. 2B, § 41(a–1). As will be explained in greater detail in the next section, its purpose is to "foster and promote temperance." *See* Md.Code Ann. Art. 2B, § 1 (1957, 1990 Repl.Vol.). Therefore, the two statutes are not aimed at achieving the same goals.

Moreover, counsel has given us no examples in the case law where the two general articles in which the two statutes are contained have been construed to be *in pari materia.* Therefore, we are not persuaded by the Board's argument that the language of the taxing statute is controlling.

## APPLICABILITY OF ART. 2B, § 41(a–1)

The Board argues that, regardless of whether Pizza Hut restaurants are chain stores, the Legislature intended to include operations like Pizza Hut restaurants under the auspices of Art. 2B, § 41(a–1) and prohibit them from receiving a liquor license. We disagree.

In construing a statute, the courts must look first to the language of the statute to discern its plain meaning. *Kaczorowski v. Mayor of Baltimore,* 309 Md. 505, 513–14, 525 A.2d 628 (1987). A court is not limited to the words of the statute and

"may and often must consider other 'external manifestations' or 'persuasive evidence,' including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case."

*Kaczorowski,* 309 Md. at 514–15, 525 A.2d 628. A court may be aided in its search for the meaning of the statute by its purpose. *Criminal Injuries Compensation Bd. v. Gould,* 273 Md. 486, 495, 331 A.2d 55 (1975). In construing a statute, a court should avoid results that are unreasonable or inconsistent with common sense. *Frank v. Baltimore County,* 284 Md. 655, 659, 399 A.2d 250 (1979).

The purpose of Art. 2B is set forth in § 1, which declares the policy behind the statute and provides, in pertinent part:

"(a) *Regulation necessary.*—(1) It is hereby declared as the policy of the State that it is necessary to regulate and control the manufacture, sale, distribution, transportation and storage of alcoholic beverages within this State and the transportation and distribution of alcoholic beverages into and out of this State to obtain respect and obedience to law and to foster and promote temperance.

"(2) It is hereby declared to be the legislative intent that such policy will be carried out in the best public interest by empowering the Comptroller of the Treasury, the various local boards of license commissioners and liquor control boards, all enforcement officers and the judges and clerks of the various courts of this State with sufficient authority to administer and enforce the provisions of this article.

"(3) The restrictions, regulations, provisions and penalties contained in this article are for the protection, health, welfare and safety of the people of this State.

"(4) It shall also be the policy of the State to tax alcoholic beverages as provided in the Tax–General Article, and to deny to any political subdivision in this State the power or authority, either by public general law or by public local law, to impose any tax on distilled spirits, beer, wine and all other alcoholic beverages on and after July 1, 1955."

When the language of Art. 2B, § 41(a–1) is read in conjunction with Art. 2B, § 1, which sets forth the purpose of the statute, we cannot say that, as a matter of law, the Legislature intended to prohibit restaurants, even restaurants that are part of a chain of restaurants, from holding liquor licenses. Rather, by enacting § 41(a–1), the Legislature intended to prohibit stores—such as chain stores, supermarkets, or discount houses—from obtaining liquor licenses.

Although the legislative history surrounding the passage of the Bill that resulted in § 41(a–1) is sparse, the text of the Bill itself, H.B. 111, which took effect on June 1, 1962, gives some insight into whether the Legislature wished to include restaurants in the prohibition of § 41. The language of H.B. 111 contained a section that was deleted prior to the Bill's passage, and the implementation of § 41. The Bill as introduced read:

"No Class A, B, or D beer, wine, and liquor license, except by way of renewal, shall be granted, transferred, or issued to, or for use in conjunction with, or upon the premises of, *or upon premises having any direct or indirect connection with or access to, any food, drug or pharmaceutical, or other* ANY business establishment of the type commonly known as chain stores, supermarkets or discount houses. NOTHING IN THIS SUB-SECTION APPLIES TO OR AFFECTS ANY SUCH TYPE OF BUSINESS ESTABLISHMENT ALREADY HOLDING SUCH A LICENSE OR THE POSSIBILITY

OF SUCH LICENSEE HAVING THE LICENSE TRANS-
FERRED TO A SIMILAR TYPE OF BUSINESS ESTAB-
LISHMENT." (Underscoring added.)

The underlined portion of the bill was stricken and does not
appear in § 41. The capitalized language was added and
became part of the statute.

The striking of the underscored language indicates that
the Legislature considered prohibiting the issuance of liquor
licenses for premises having a connection with or access to
food that might otherwise fall within the definition of chain
stores, supermarkets or discount houses, but decided not to
enact such a prohibition.[5] The language relating to chain
stores, supermarkets, or discount houses was, however,
retained.

In the instant case, the trial judge in his Memorandum
Order stated, in pertinent part:

"[R]estaurants are of a different nature than establish-
ments commonly referred to as stores; the latter sells
merchandise in virtually the same form in which it is
received, while the former performs a service in trans-
forming ingredients into an edible product very different
from the ingredients themselves.

* * * * * *

"Restaurants are not commonly referred to as 'stores.'
If the legislature had wished to include restaurants in the
prohibitions of Article 2B, Section 41(a–1), it could have
specifically mentioned them as it did supermarkets and
discount houses. We do not believe the legislature was
intending to encompass restaurants such as Pizza Hut
when it passed the statute in question. For us to include
restaurants within its ambit now would be to force an

---

5. While an argument could be made that the Legislature viewed the
stricken language as unnecessary and that the removal of the under-
scored language did not change the legislative intent to prohibit the
granting of licenses to premises connected with food, drugs or phar-
maceuticals, we are provided with no legislative history that would
support this inference. In addition, the Board has never raised this
issue nor suggested this possibility.

interpretation on the plain language of the statute to extend its operation. We decline to do so. If the legislature wishes to extend the application of Article 2B, Section 41(a-1) to restaurants, it is free to do so."

We find no error in the trial judge's conclusion.

The Board itself has interpreted § 41(a–1) to allow Pizza Huts in Carroll County to hold liquor licenses. The Board granted and renewed all of the licenses at issue in this appeal, starting as early as 1972.

The Board argues that the Legislature intended, through the use of § 41(a–1), to end the "evil of multi-license leveraged purchasing and the competitive advantage that might result" when a "chain store" has the benefit of the license. Without the license, the Board argues, the store cannot sell alcoholic products and, therefore, cannot exercise market advantage against its single-license competitors. The Board states that, as a chain, Pizza Hut is able to buy alcohol and food products, reduce administrative, equipment, fixture, and realty costs, and compete in a way definitively proscribed by the Legislature throughout Art. 2B.

■ Since businesses commonly known as chain stores, supermarkets, or discount houses are prohibited absolutely from holding liquor licenses, the county-by-county exceptions prohibiting "additional" licenses, found in the statute, are exceptions to Md.Code Ann. Art. 2B, § 41(a) (1957, 1990 Repl.Vol., 1992 Cum.Supp.), not § 41(a–1).

Section 41(a) provides:

"No more than one license provided by this article, except by way of renewal, shall be issued in any county or Baltimore City, to any person, or for the use of any partnership, corporation or unincorporated association, or limited liability company, in Baltimore City or any county of the State, and no more than one license shall be issued for the same premises except as provided in §§ 5 and 6 and nothing herein shall be construed to apply to subsections (b) and (c) of § 25 or to § 121 (pertaining to special

music or dancing licenses for Anne Arundel County) of this article."

Maryland Code Ann. Art. 2B, §§ 41(b) through 41(n) (1957, 1990 Repl.Vol., 1992 Cum.Supp.), contain county-by-county exceptions to the general language of the statute. The language of each exception supports Pizza Hut's argument that the exceptions relate to § 41(a), not § 41(a–1). For example, the Montgomery County exception in § 41(a–2)(4) states:

"This subsection does not permit the issuance to a[ny] person or for the use of any partnership, corporation, unincorporated association, or limited liability company in Montgomery County of more than 2 licenses for restaurants."

The Worcester County exception found at Art. 2B, § 41(j)(1) states in pertinent part:

"Nothing contained herein shall permit the issuance of more than a total of three (3) licenses of all classes issued under this section to any person, or for the use of any partnership, corporation, unincorporated association, or limited liability company in Worcester County [.]"

In 1968, the Attorney General was asked if § 41(a–1) prohibited a restaurant from obtaining a second license in Baltimore City. The Attorney General responded that the adoption of subsection 41(b–6) modified the general prohibition with respect to Baltimore City and authorized the second license. 53 A.G. Op. 36 (1968). The Attorney General stated:

"While it would appear that [§ 41(a–1)] would prohibit the Board from issuing a license to the Company, the General Assembly in 1968, enacted Chapter 326 which makes an exception to the provisions of Section 41(a–1) by permitting the Board to grant as many as three class 'B' licenses to the same licensee provided that any additional license be for a restaurant that has a minimum capital investment of $150,000.00 for restaurant facilities and has a minimum seating capacity of 125 persons.... It is our

opinion that if the Company can establish that they meet the qualifications set forth in Chapter 326, the Board of Liquor License Commissioners may issue a Class 'B' Beer, Wine and Liquor restaurant license for their store located on Howard Street."

Thus, "additional" licenses may be issued if certain conditions are met. With regard to restaurants, these conditions generally address the capital investment in the restaurant and the seating capacity. *See e.g.* Art. 2B, § 41(a–2) (Montgomery County—additional licenses may be obtained for a restaurant with a capital investment of not less than $250,-000 and having a minimum seating capacity of 125 persons); Art. 2B, § 41(j) (Worcester County) (additional licenses may be obtained for restaurants with minimum capital investment of $150,000 and minimum seating capacity of 125 persons). The statute does not contain any such exception for Carroll County.

The language of these exceptions modifies the language in § 41(a). Section 41(a) is not, however, at issue in this appeal. The Board's complaint is based on the language in § 41(a–1); thus, its argument that the exceptions to § 41(a) apply to the issue now before us is without merit.

The trial judge concluded that the proscription against granting liquor licenses to chain stores did not apply to members of a "chain" of restaurants such as the Carroll County Pizza Huts. Based on our reading of the applicable statutes, case law, and declaration of purpose contained in Article 2B, we find no error in his conclusion.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.