593 A.2d 678

Vernice ANDERSON, et al.

v.

FORD MOTOR CREDIT CORPORATION

No. 68, Sept. Term, 1990.

Court of Appeals of Maryland.

Aug. 15, 1991.

Louise M. Carwell, Legal Aid Bureau, Inc., Baltimore, both on brief, for petitioners.

Robert J. Thieblot, Robert D. Harwick, Jr., Thieblot, Ryan, Martin & Ferguson, Baltimore, all on brief, for respondent.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ., and CHARLES E. ORTH, Jr., and MARVIN H. SMITH, Judges of the Court of Appeals (retired, specially assigned), JJ.

McAULIFFE, Judge.

In this case we are concerned with whether a lease of an automobile was entered in violation of the Federal Consumer Leasing Act, 15 U.S.C. §§ 1667 through 1667e (1988).

Because we hold that a violation did occur, we do not reach the second question raised by petitioners regarding whether the Maryland Consumer Protection Act (CPA), Maryland Code (1975, 1990 Repl.Vol.), § 13–101 *et seq.* of the Commercial Law Article, was violated.

## I.

On 26 September 1985, Vernice Anderson and her mother, Betty Yancey, leased a new 1985 Ford Tempo from Koons Ford of Baltimore for four years. The transaction was evidenced by a form lease [1] which stated that Koons Ford would immediately assign its interest in the automobile and its rights under the lease to Ford Motor Credit Company (Ford Credit). The assignment was made in consideration of a payment by Ford Credit to Koons Ford in the amount of $11,827.06.

The terms of the form lease were printed on both sides of a single page with blanks to be filled in by hand to reflect the specifics of this particular transaction. The clause evidencing the assignment of the lease from Koons Ford to Ford Credit appeared on the lower one-half of the reverse side of the form. In that clause there was a blank to be filled in with the lease-end residual value of the vehicle. The predetermined value of $3,881.88 appears in that blank on the original of the lease, which was retained by Ford Credit. Ford Credit contends that the blank was filled in on the original lease before the lessees signed, and it points to a statement that was printed at the end of the lease, providing:

> The Lessee states that he has been given a filled-in copy of the Lease at the time he signs it and notice of the assignment of this Lease to Ford Credit.

Although both lessees signed their names below this statement in the lease, and both received a copy of the lease,

---

1. The form of this lease is very similar to that of the lease we recently discussed in *Keeling v. Ford Motor Credit,* 314 Md. 311, 550 A.2d 932 (1988).

neither of them received a copy that had the residual value blank filled in, nor were they otherwise informed that $3,881.88 was the predetermined residual value of the vehicle.

Under the terms of the lease, the lessees agreed to make rental payments, including rental taxes, of $247.04 per month for 48 months or a total of $11,857.92. At the conclusion of the lease term, lessees promised to return the automobile to Ford Credit. It was expressly provided that "[t]his Lease is one of leasing only. The Lessee does not have an option to buy the Vehicle."

In the event of a default by the lessees, the parties agreed:

If the Lessee fails to make any payment under this Lease when it is due, or if the Lessee fails to keep any other agreement in this Lease, the Lessor may terminate this Lease and take back the Vehicle. The Lessor may go on the Lessee's property to retake the Vehicle. Even if the Lessor retakes the Vehicle, the Lessee must still pay at once the monthly payments for the rest of the lease term and any other amounts that the Lessee owes under this Lease. The Lessor will subtract from the amount owed sums received from the sale of the Vehicle in excess of what the Lessor would have had invested in the Vehicle at the end of the lease term. The Lessee must also pay all expenses paid by the Lessor to enforce the Lessor's rights under this Lease, including reasonable attorney's fees as permitted by law, and any damages caused to the Lessor because of the Lessee's default. The Lessor may sell the vehicle at public or private sale with or without notice to the Lessee.

This clause appeared on the upper one-half of the reverse side of the lease form.

After making payments for 20 months, the lessees defaulted. Ford Credit repossessed the vehicle on 24 July 1987, and notified the lessees of the date, time, and place of a public auction sale of the automobile. It was sold on 14 August 1987, for $4,900.

Ford Credit deducted from the total of the 28 unpaid monthly rental payments the amount by which the proceeds of the auction sale of the vehicle exceeded $2,409.60.[2]   It then charged lessees' account with unpaid late charges and expenses incident to the repossession and sale of the vehicle.   Lessees were given credit for the security deposit of $500 which they made when they entered the lease, and the resulting deficiency balance so computed by Ford Credit was $3,893.34.

In January of 1989, Ford Credit brought suit against the lessees in the District Court of Maryland in Baltimore City, claiming the alleged deficiency balance and attorney's fees authorized by the lease.   Lessees contested the suit, but after a trial, the District Court entered judgment in favor of Ford Credit.   That judgment was affirmed on appeal to the Circuit Court for Baltimore City.   We granted the lessees' petition for a writ of certiorari to address the issues raised by the lessees under the Federal Consumer Leasing Act (CLA).

## II.

The CLA was enacted by Congress in 1976 to supplement the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (1988), which had no application to most consumer leases. S.Rep. No. 590, 94th Cong., 2d Sess. 1, *reprinted in* 1976 U.S.Code Cong. & Admin.News 431–441; *Brothers v. First Leasing,* 724 F.2d 789, 791 (9th Cir.1984), *cert. denied,* 469

---

2.   Under the terms of the default clause of the lease, which we quoted above, Ford Credit agreed to reduce the balance due by the lessees by the proceeds of the sale of the vehicle "in excess of what the Lessor would have had invested in the Vehicle at the end of the lease term." In the lease, Ford Credit had estimated the lease-end residual value of the vehicle at $3,881.88.   The reason why it used the lower figure of $2,409.60 instead is not apparent from the record.   Counsel for Ford Credit in oral argument before us suggested that it was simply an error.   In any event, it is of no legal significance that the Lessor erroneously applied a lower figure to the ultimate advantage of lessees.

U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984). The purpose of the CLA is expressed in 15 U.S.C. § 1601(b):

> The Congress also finds that there has been a recent trend toward leasing automobiles and other durable goods for consumer use as an alternative to installment credit sales and that these leases have been offered without adequate cost disclosures. It is the purpose of this subchapter to assure a meaningful disclosure of the terms of leases of personal property for personal, family, or household purposes so as to enable the lessee to compare more readily the various lease terms available to him, limit balloon payments in consumer leasing, enable comparison of lease terms with credit terms where appropriate, and to assure meaningful and accurate disclosures of lease terms in advertisement.

Lessees contend that the default clause of the lease, which we have quoted above, fails to comply with 15 U.S.C. § 1667a which provides, in pertinent part:

> Each lessor shall give a lessee prior to the consummation of the lease a dated written statement on which the lessor and lessee are identified setting out accurately and in a clear and conspicuous manner the following information with respect to that lease, as applicable:
>
> \*     \*     \*     \*     \*     \*
>
> (11) A statement of the conditions under which the lessee or lessor may terminate the lease prior to the end of the term and the amount or method of determining any penalty or other charge for delinquency, default, late payments, or early termination.

Ford Credit challenges this contention on two grounds. It argues that the formula for determining the lessees' liability upon default is not covered by 15 U.S.C. § 1667a(11), but even if it is, that lessees' liability upon default is properly disclosed.

We reject Ford Credit's first alternative response that the formula for computing the lessee's liability upon default is not covered by 15 U.S.C. § 1667a(11). Considering the plain

language of this section in light of the legislative history of the CLA, we hold that the lessor is required to disclose "the amount or method of determining any ... charge ... for default ... or early termination" and that Ford Credit failed to do so properly. *Id.* The Senate Report accompanying the CLA states that the bill will require "full disclosure of any charges incident to such termination." S.Rep. No. 590, 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Admin. News 435. Additionally, Regulation M, issued to assist in the implementation of the CLA, states that the "amount or method of determining the amount of any penalty or other charge for early termination" must be disclosed. 12 C.F.R. § 213.4(g)(12) (1991).[3] Finally, *Truth in Lending*, a treatise analyzing the CLA, discusses the early termination and default requirements and comments that the disclosure "must be clear, conspicuous, and in a meaningful sequence.... Whenever a key number in the early termination formula is left blank or not discussed anywhere in the contract, this is a certain disclosure violation." K. Keest & E. Sarason, *Truth in Lending*, § 9.3.6.12, p. 339 (1989). The reference to formulas and numbers evidences that the method or amount in determining the charge must be furnished.

The relevant portion of the lease provides:

Even if the Lessor retakes the Vehicle the Lessee must still pay at once the monthly payments for the rest of the lease terms and any other amounts that the Lessee owes under this Lease. The Lessor will subtract from the amount owed sums received from the sale of the Vehicle in excess of what the Lessor would have had invested in the Vehicle at the end of the lease term.

The method of determining the lessees' liability upon default directly involves the lease-end residual value of the

---

**3.** In fact the model forms accompanying Regulation M contain a question asking "the amount or method of determining the amount of any default charges." Appendix C to Part 213–Model Forms, C–2, Instructions to Question 13.

vehicle as predetermined by the lessor. The lease-end residual value assigned by the lessor in this case, and the amount the lessor's assignee was entitled to use in computing the lessees' liability upon default, was $3,881.88. Under the terms of the lease, the lessor had the right to deduct that figure from the net proceeds of the sale of the vehicle in order to establish the credit due the lessees. Disclosure of that figure, representing the lease-end residual value of the vehicle as established by the lessor, was therefore required by the mandate of § 1667a. Simply telling the lessees that their liability would be predicated upon the residual value, without disclosing that predetermined value in writing, does not satisfy the requirements of § 1667a.

We further hold that the requirement of disclosure of a predetermined residual value which is a key factor in the determination of a lessee's liability upon default is not satisfied by including that figure on the original of the lease at the time it is signed, yet not including it on the copy of the lease given to the lessees or on a separate statement furnished to the lessees prior to consummation of the lease. Section 1667a precisely defines the manner in which the required disclosures must be made. It provides that "[e]ach lessor shall *give* a lessee *prior to the consummation of the lease a dated written statement*" containing the required disclosures. (Emphasis added.) This was not done.

Section 1667a also provides that "[t]he disclosures required under this section may be made in the lease contract to be signed by the lessee." The proper interpretation of the concluding language in this section is to permit the lessor to comply with the requirement of delivery of a written statement by delivering to the lessee, prior to the consummation of the lease, a copy of the lease that contains all the required disclosures. *See* Regulation M, 12 C.F.R. § 213.4(a)(2) (1991) (disclosures may be made prior to the consummation "either in the contract or other instrument evidencing the lease, or on a separate statement which identifies the lease transaction"). Thus, the lessor is given

an alternative method of complying with the clear mandate of the statute, and a duplication of documents may be avoided. This interpretation harmonizes the two provisions of § 1667a, rather than viewing one as eviscerating the other, and is consistent with the apparent remedial purpose of the statute. *See State v. Fabritz,* 276 Md. 416, 421, 348 A.2d 275 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976) ("statutes are to be construed reasonably with reference to the purpose to be accomplished").

The lessor in this case did not avail itself of either of the permitted methods of providing the lessees with a written statement containing the required disclosures, and thus it failed to comply with 15 U.S.C. § 1667a. Accordingly, we shall reverse the judgment below, and remand this case for further proceedings.[4] As a result, we do not reach the question of whether there has been a violation of the Maryland Consumer Protection Act.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE DISTRICT COURT OF MARYLAND AND REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS IN THIS COURT AND IN THE CIRCUIT COURT TO BE PAID BY RESPONDENT.

Dissenting Opinion by KARWACKI, J., in which SMITH and ORTH, JJ., join.

KARWACKI, Judge, dissenting.

I respectfully dissent.

The majority concludes that 15 U.S.C. § 1667a (1988) requires that the lessee be furnished a copy of the lease containing the required disclosures and that the lessor's

---

4. Ford Credit raised a question of limitations before the District Court, which was not considered below nor by us, but which must be considered on remand.

failure to furnish the copy constitutes a violation of the disclosure requirement. In reaching that result, I suggest that the majority has ignored the plain meaning of the language employed by Congress and the history of the passage of this legislation.

15 U.S.C. § 1667a provides in pertinent part:

"Each lessor shall give a lessee prior to the consummation of the lease a dated written statement on which the lessor and lessee are identified setting out accurately and in a clear and conspicuous manner the following information with respect to that lease, as applicable: ...

(11) A statement of the conditions under which the lessee or lessor may terminate the lease prior to the end of the term and the amount or method of determining any penalty or other charge for delinquency, default, late payments, or early termination.

The disclosures required under this section may be made in the lease contract to be signed by the lessee."

Thus, as the majority recognizes, alternative methods are provided for compliance with the disclosure requirements. The lessor may either set them forth in a written statement delivered to the lessee prior to consummation of the lease or they may be contained in the lease to be signed by the lessee.

There is no requirement in this legislation that a copy of the executed lease be furnished to the lessee. The decision to forego any such requirement was deliberate as is indicated from the history of the passage of the Consumer Leasing Act of 1976. Senate Report No. 590, 94th Cong.2d Session 1, *reprinted in* 1976 U.S.Code Cong. & Admin. News 431 explains:

"The Consumer Leasing Act had its origin in recommendations made by the Federal Reserve Board in its 1973 and 1974 Reports to Congress on Truth in Lending. Two bills were introduced in the Senate, S. 1900 by Senators Garn and Morgan, and S. 1961, by Senators Biden and Proxmire, and hearings were held on them on

July 15, 17, and 24, 1975, by the Subcommittee on Consumer Affairs. The Subcommittee met on September 29 and recommended an amended composite of the two bills to the full Committee. On December 15, 1975, the full Committee approved the bill as recommended, with one additional amendment. In the meantime the House had passed a bill on the same subject, H.R. 8835, which had been sent to the Senate and referred to the Committee. The Committee therefore substituted the text of its bill for that of H.R. 8835, which without objection is herewith reported."

The disagreements between the House of Representatives and the Senate were resolved by conference committee. The joint explanatory statement of that committee, *reprinted in* 1976 U.S.Code Cong. & Admin. News 442–43, expressly addressed the issue of whether the lessee need be furnished a copy of the lease containing the disclosures required by the legislation. That statement relates:

"The managers on the part of the House and the Senate at the conference on the disagreeing votes of the two Houses on the amendment of the Senate to the bill (H.R. 8835) to amend the Truth in Lending Act to protect consumers against inadequate and misleading leasing information, assure meaningful disclosure of lease terms, and limit ultimate liability in connection with leasing of personal property primarily for personal, family, or household purposes, and for other purposes, submit the following joint statement to the House and the Senate in explanation of the effect of the action agreed upon by the managers and recommended in the accompanying conference report:

The Senate amendment struck out all of the House bill after the enacting clause and inserted a substitute text.

The House recedes from its disagreement to the amendment of the Senate with an amendment which is a substitute for the House bill and the Senate amendment. The differences between the House bill, the Senate amendment, and the substitute agreed to in conference are

noted below, except for clerical corrections, conforming changes made necessary by agreements reached by the conferees, and minor drafting and clarifying changes. . . .

The House bill provided for the manner in which lessors were to make specified disclosures, including clearly and conspicuously, and that the disclosures were to be in the lease contract and a copy given to the lessee when executed. The Senate amendment was comparable, except that it additionally required that disclosures be accurate and could be either in the lease contract or in a written statement. There was no express requirement for a copy to be given to the lessee. The House receded to the Senate amendment."

In *Nat'l Un. of Hosp. v. Johns Hopkins*, 293 Md. 343, 360, 444 A.2d 448, 456 (1982), we emphasized that:

"it is a cardinal rule that in construing a legislative enactment courts should confine themselves to a construction of a statute as written, and not attempt, under the guise of statutory construction, to supply omissions or remedy possible defects in the statute, or to insert exceptions not made by the legislature. Cases to this effect are legion. *Employ. Sec. Adm. v. Browning-Ferris*, 292 Md. 515, 438 A.2d 1356 (1982); *Baltimore Gas & Elec. v. Department*, 284 Md. 216, 231, 395 A.2d 1174 (1979) (construing a statute liberally and adding to it, by judicial fiat, a provision which the legislature did not see fit to include are not one and the same thing); *Amalgamated Ins. v. Helms*, 239 Md. 529, 535–36, 212 A.2d 311 (1965)."

In my view the majority has violated that cardinal rule in its construction of 15 U.S.C. § 1667a in this case.

Judges Smith and Orth have authorized me to state that they join in this opinion.