842 A.2d 1

**Alton E. DREW**

v.

**FIRST GUARANTY MORTGAGE CORPORATION, et al.**

**No. 1, Sept. Term, 2003.**

Court of Appeals of Maryland.

Nov. 12, 2003.

Reconsideration Denied Dec. 5, 2003.

Scott C. Borison (Douglas B. Bowman, Legg Law Firm, LLC, Frederick, on brief), for appellant.

Jacob Geesing (Bierman, Geesing & Ward, LLC, Bethesda, on brief), for appellees.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JJ.

BATTAGLIA, J.

This case comes to us by a Certified Question from the United States District Court, District of Maryland, pursuant to the Maryland Uniform Certification of Questions of Law Act, Maryland Code, §§ 12–601 through 12–613 of the Courts

and Judicial Proceedings Article (1974, 2002 Repl.Vol.), and Maryland Rule 8–305. The question of Maryland law set forth in the Certification Order is as follows:

Whether Md.Code Ann. Com. Law II, Section 12–404(c)(2) (2002) mandates that a lender or a seller who takes a mortgage or a deed of trust to secure all or a portion of the purchase price of a residence and who creates a balloon payment must state in writing on the loan documents that the lender or seller must postpone the maturity of the balloon payment one time at the borrower's request, for a period not to exceed six (6) months, provided that the borrower continues to make the monthly installments provided for in the original loan agreement; and if the answer to the certified question of law is in the affirmative, whether Section 12–413 is then applicable to the loan.[1]

---

1. Maryland Code, § 12–404(c)(2) of the Commercial Law Article (1975, 2000 Repl.Vol.), in relevant part, provides:

(C) *Amortization of loan.*—A loan shall be amortized in equal or substantially equal monthly installments without a balloon payment at maturity, except that:

\*　　\*　　\*

(2) A lender, including a seller who takes a mortgage or deed of trust to secure payment of all or a portion of the purchase price of a residence sold to a borrower, may make a loan for the purpose of aiding the borrower in the sale of the borrower's residence or the purchase of a new residence, and may create a balloon payment at maturity of this loan if the balloon payment is:
(i) Expressly disclosed to the borrower;
(ii) Agreed to by both the borrower and the lender/seller in writing; and
(iii) Required to be postponed one time, upon coming due, at the borrower's request, for a period not to exceed 6 months, provided that the borrower continues to make the monthly installments provided for in the original loan agreement, and no new closing costs, processing fees or similar fees are imposed on the borrower as a result of the extension. . . .
Maryland Code, § 12–413 of the Commercial Law Article (1975, 2000 Repl.Vol.) provides:
Except for a bona fide error of computation, if a lender violates any provision of this subtitle he may collect only the principal amount of the loan and may not collect any interest, costs, or other charges with respect to the loan. In addition, a lender who knowingly violates any provision of this subtitle also shall forfeit to the borrower three times

The borrowers, the Drews, argue that Maryland's Secondary Mortgage Loan Law (Secondary Mortgage Law) requires the lender to disclose to the borrower that a lender is required to postpone a balloon payment[2] at maturity without charge at the borrower's request. When a lender does not do so, the Drews maintain that the Secondary Mortgage Law is violated and its penalty provisions apply. Wilshire Credit Corporation, the current holder of the Drews' secondary mortgage, argues that the Secondary Mortgage Law does not require the lender to disclose to the borrower the one-time postponement right. Wilshire also argues that the Drews were not harmed by the loan provision at issue because the balloon payment provision was not triggered and that the Secondary Mortgage Law's penalty provisions could apply in this case only if they had denied the Drews their right to postponement when the balloon payment matured.

We hold that Section 12–404(c)(2) does not require a seller or lender, who takes a secondary mortgage or a deed of trust securing all or a portion of a residence's purchase price and creating a balloon payment, to state in writing that the statutory postponement period of six months is available to borrowers. Because we so hold, we do not reach the question as to whether the penalty provisions found in Section 12–413 apply.

---

the amount of interest and charges collected in excess of that authorized by law.

**2.** A balloon payment occurs at the end of a fixed-rate loan term when the loan principal is not fully amortized by the regular monthly payments. In other words, it is the payment of the unpaid principal and/or interest due in its entirety at the end of a loan term. *See* HUD–Treasury Task Force on Predatory Lending, *Curbing Predatory Home Mortgage Lending,* 96 (June 2000) <*http://www.huduser.org/publications/pdf/treasrpt.pdf*> (hereinafter HUD Task Force). With respect to balloon payments, we have explained that, "[c]alculations of a pay-out figure based on a time period different from that over which the payments are to run are not unusual in modern real estate financing. This method of repayment results from a desire to have lower monthly payment requirements and still have the mortgage debt paid in full at an earlier date than would otherwise result." *Paape v. Grimes,* 256 Md. 490, 495, 260 A.2d 644, 647 (1970).

## I. Facts

Alton and Verne Drew purchased a new residence in Frederick, Maryland, from Ryan Homes. Part of the purchase price was issued in the form of a loan, signed on December 15, 2000, secured by a secondary mortgage, now held by Wilshire Credit Corporation,[3] with a balloon payment of an amount that approximates 92% of the principal of the secondary mortgage after payments for 15 years. The promissory note provided for principal and interest payments of $763.98 monthly, commencing February 1, 2001, with the last payment due January 1, 2016. Under the balloon payment disclosure, the amount due at maturity is estimated to be $54,063.30. The balloon payment provision was disclosed to the Drews in writing, and they inscribed their agreement to the provision. The loan documents did not reflect the fact, however, that Section 12–404(c)(2) of the Commercial Law Article requires lenders, in this case, Wilshire, to postpone the maturity date of the loan one time for six months at the borrower's request. Rather, the loan provisions stated in part:

> Unless otherwise expressly disclosed in the Note, or in an Addendum or a Rider to the Note, THE LENDER IN THIS TRANSACTION IS UNDER NO OBLIGATION TO REFINANCE THE OUTSTANDING PRINCIPAL BALANCE OF THIS LOAN DUE ON MATURITY DATE. You may be required to payoff the entire principal balance, plus any unpaid interest due thereon, on the maturity date using personal assets. If this Lender, or any other Lender, agrees to refinance the outstanding balance due on the maturity date, you may be required to pay the then prevailing interest rate, which may be higher or lower than the interest rate specified in the Note, plus loan origination

---

**3.** At the time of the settlement on the sales transaction, the Drews signed a note secured by a first lien in favor of First Guaranty Mortgage Corporation and a junior note now held by Wilshire Credit Corporation. The second trust loan now held by Wilshire contained the balloon provision at issue. Although the record is unclear, the second mortgage appears to have been held by NVR Mortgage Finance, Inc. prior to Wilshire.

costs and fees as are typically incurred when creating a new loan. (Emphasis in original.)

The balloon payment is not due until 2016, and the Drews have not requested an extension.

## II. Discussion

We will examine Section 12–404(c)(2) of the Secondary Mortgage Law to resolve whether the provision requires the lender to disclose in writing to the borrower that a one-time six-month postponement period is available to the borrower at the time the entire principal payment or balloon payment matures. To do so, we will explore the statute's plain language and legislative history.

### A. The Secondary Mortgage Law

Balloon payments have long been identified as loan transactions that are particularly problematic for consumer borrowers. *See, e.g.,* HUD Task Force at 97 (explaining how balloon terms can be "onerous" and result in higher payments for the borrower); William N. Eskridge, Jr., *One Hundred Years of Ineptitude: The Need for Mortgage Rules Consonant With Economic and Psychological Dynamics of the Home Sale and Loan Transaction,* 70 VA. L.REV. 1083, 1158 (1984) (describing balloon payments as a "high-stakes gamble by the home purchaser that he can refinance the principal with a new loan, or that he can sell the house for a price close to or higher than the balloon"). While some states forbid them altogether, *see, e.g.,* N.C. GEN.STAT. § 24–1.1E(b) (2001), other states, like Maryland, allow balloon payments in certain circumstances. The Uniform Consumer Credit Code, for example, which influenced many state statutes in this area, provides that, with respect to balloon payments, a "contract evidencing the consumer credit transaction gives the consumer the right to refinance the amount of the final payment." *See* § 3–308 of the Uniform Consumer Credit Code. In Iowa, the state requires lenders to offer to refinance the balloon payment twenty days prior to the balloon payment date. IOWA CODE § 534.205(6)(2001). Likewise, California requires the lender

to offer or arrange for refinancing upon the balloon payment's maturity. CAL. HEALTH & SAF.CODE § 52513.5(a) (2003). In Maine, balloon payment provisions are allowed only if the contract gives the consumer the right to refinance. ME.REV. STAT. ANN. tit.9–A, § 3–308 (2002). In Kansas, the borrower has the right to refinance the amount of a balloon payment at maturity without penalty. KAN. STAT. ANN. § 16a–3–308 (1995). Although their approaches differ, the goal of all of these statutes is to provide borrowers with the knowledge and ability to refinance their balloon payment without penalty if they are unable to pay it off at maturity.

The General Assembly of Maryland enacted the Secondary Mortgage Loan Law in 1967.[4] 1967 Md. Laws, Ch. 390. When the Secondary Mortgage Law first was enacted, balloon payments were prohibited in secondary mortgages.[5] In addition, providing that "[n]o lender shall make or offer to make any secondary mortgage loan except within the terms and

---

4. According to its title, the Secondary Mortgage Law was enacted to: generally provide for the licensing of persons in the business of negotiating secondary mortgage loans, and to generally provide for the regulations of such persons and such loans, to give the Banking Commissioner certain duties and powers in the regulation of such persons and loans, to provide penalties for violations and to generally relate to secondary mortgage transactions and the regulation of persons in this business." ·
 1967 Md. Laws, Ch. 390.
 In 1967, when Maryland first passed the Secondary Mortgage Law, it did so during a time when consumer protection reform was sweeping the country. In 1968, Congress passed the Consumer Credit Protection Act, which included the Truth in Lending Act to promote the "informed use of credit." Pub.L. No. 90–321, 82 Stat. 146 (codified as amended at 15 U.S.C. §§ 1601–1667e (1998)). Also in 1968, the National Conference of Commissioners on Uniform States Laws promulgated the Uniform Consumer Credit Code, which then was revised and approved by the American Bar Association in 1974. 1 HOWARD J. ALPERIN & ROLAND F. CHASE, CONSUMER LAW: SALES PRACTICES AND CREDIT REGULATION § 273 (1986). While only a few states adopted the Uniform Consumer Credit Code in its entirety, it greatly influenced state consumer protection legislation. *Id.*

5. Section 61(a) of the enactment provided that "[t]he secondary mortgage loan between the borrower and lender shall be amortized in equal or substantially equal monthly installments without a balloon payment at maturity." 1967 Md. Laws, Chap. 390.

conditions authorized by this subtitle," 1967 Md. Laws, Ch. 390, Section 60, the Secondary Mortgage Law included a civil penalty provision [6] and a criminal penalty provision.[7] The Secondary Mortgage Law was recodified without modification as part of the Commercial Law Article in 1975. 1975 Md. Laws, Ch. 49, § 3.

From 1975 to 1985, the General Assembly modified the Secondary Mortgage Law several times. In 1975, the General Assembly changed the statute to allow balloon payments in commercial loans and residential secondary loans designed to help a borrower sell his residence. 1975 Md. Laws, Ch. 574. It also added two express disclosure provisions, requiring that the balloon payment be:

I. Expressly disclosed to the borrower, and

II. Agreed to by both the borrower and the lender/seller in writing.

Md. Laws 1975, Ch. 574.

In 1982, during a savings and loan crisis, the General Assembly modified the Secondary Mortgage Law as part of a comprehensive effort to make mortgages more available to prospective homeowners during a period of heightened interest rates. *See* Bill file for House Bill 305, testimony of

---

**6.** Section 69 provided:

In any transaction made in violation of the provisions of this subtitle, except where the violation results from an actual or bona fide error of computation, the lender shall be entitled to be repaid only the actual amount of the mortgage loan, exclusive of any interest, costs, or other charges of whatever nature; and further, any lender who shall knowingly violate any provisions of this subtitle shall pay to the borrower an amount equal to triple the excess paid over the amount of interest and/or other charges allowed by law.

1967 Md. Laws, Ch. 390.

**7.** Section 68 provided:

Any licensee and any officer or employee of a licensee or any person, who shall wilfully violate any of the provisions of this subtitle shall be guilty of a misdemeanor, and upon conviction thereof shall be punishable by a fine of not more than one thousand dollars ($1,000.00), or by imprisonment of not more than one (1) year, or by both such fine and imprisonment, in the discretion of the court.

1967 Md. Laws, Ch. 390.

Delegate John W. Quade, 1982. House Bill 305, which amended the provision at issue here, was passed as part of this effort. Its primary intent was the expansion of the availability of balloon payment provisions and the establishment of the maximum rate of interest lenders could charge on secondary mortgage loans.[8] Extracts from House Bill 305's bill file, however, indicate that the legislation as introduced was perceived as weakening the consumer protection provisions in its companion legislation, House Bill 1853. Summary of Testimony of Delegate Stephen V. Sklar on House Bill 305 (1982); Letter from Stephen Sachs, Attorney General, to Senator Harry J. McQuirk, Chairman of the Senate Economic Affairs Committee (April 7, 1982). Three days after the Attorney General expressed his concerns about the bill, the Senate Economic Affairs Committee adopted an amendment to the bill adding a postponement provision to the statute. Substitute Committee Amendment No. 4 to House Bill No. 305 (April 10, 1982). Consequently, after the amendment, Section 12–404(c)(2) required that a balloon payment must be:

I. Expressly disclosed to the borrower;

II. Agreed to by both the borrower and the lender/seller in writing; and

III. Required to be postponed one time, upon becoming due, at the borrower's request, for a period not to exceed 24 months, provided that the borrower continues to make the monthly installments provided for in the original loan agreement, and no new closing costs,

---

8. The purpose clause of House Bill 305 reads as follows:

For the purpose of establishing maximum rates of interest that a lender may charge on second mortgage loans; allowing lenders to collect certain fees and charges; allowing balloon payments on certain second mortgage loans; requiring the option of an extension of payments in certain second mortgage loan agreements providing for balloon payments; providing for certain consumer protection provisions; allowing the imposition and collection of certain fees or points pursuant to certain federal loan purchase programs; and generally relating to secondary mortgage loans.

1982 Md. Laws, Ch. 609.

processing fees or similar fees are imposed on the
borrower as a result of the extension.

Maryland Code, § 12–404(c)(2)(i)–(iii) of the Commercial Law
Article (1975, 1983 Repl.Vol.).

Finally, in 1985, the General Assembly changed the statuto-
ry postponement period from twenty-four to six months, the
postponement period presently available to consumer borrow-
ers. 1985 Md. Laws, Ch. 597.

### B. The Postponement Provision Does Not Require Written Notice

 Turning now to the provision at issue, we begin our
analysis by examining Commercial Law Article, Section 12–
404(c)(2), which governs balloon payments in secondary mort-
gage loans. As we explained in *Beyer*, ascertaining legislative
intent is the principal goal of statutory interpretation. *Beyer
v. Morgan State Univ.*, 369 Md. 335, 349, 800 A.2d 707, 715
(2002). The most important goal of statutory interpretation,
we have emphasized often, is to "identify and effectuate the
legislative intent underlying the statute(s) at issue." *Derry v.
State*, 358 Md. 325, 335, 748 A.2d 478, 483 (2000). *See also
Marriott Employees Fed. Credit Union v. Motor Vehicle
Admin.*, 346 Md. 437, 444–45, 697 A.2d 455, 458 (1997);
*Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 73, 517 A.2d
730, 731 (1986). The plain statutory language is the best
source of legislative intent, and, when the language is clear
and unambiguous, our inquiry ordinarily ends there. *Beyer*,
369 at 349, 800 A.2d at 715. Even so, while the plain language
of the statute guides our understanding of legislative intent,
we do not read the language in a vacuum. *See Derry*, 358 Md.
at 336, 748 A.2d at 483–84. We read statutory language
within the context of the statutory scheme, considering the
"purpose, aim, or policy of the enacting body." *Beyer*, 369
Md. at 350, 800 A.2d at 715; *In re Mark M.*, 365 Md. 687, 711,
782 A.2d 332, 346 (2001)(quoting *Tracey v. Tracey*, 328 Md.
380, 387, 614 A.2d 590, 594 (1992)). We have explained that,

> When we pursue the context of statutory language, we are not limited to the words of the statute as they are printed.... We may and often must consider other "external manifestations" or "persuasive evidence," including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.

*Id.* at 711–12, 782 A.2d at 346 (quoting *Williams v. Mayor and City Council of Baltimore,* 359 Md. 101, 116, 753 A.2d 41, 49 (2000)). In short, our role is to apply a "commonsensical" approach to the information available to us so that we may best effectuate the General Assembly's intent. *Graves v. State,* 364 Md. 329, 346, 772 A.2d 1225, 1235 (2001); *see also Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112 (1994); *Dickerson v. State,* 324 Md. 163, 171, 596 A.2d 648, 652 (1991).

Section 12–404(c)(2) of the Secondary Mortgage Law provides:

> (2) A lender, including a seller who takes a mortgage or deed of trust to secure payment of all or a portion of the purchase price of a residence sold to a borrower, may make a loan for the purpose of aiding the borrower in the sale of the borrower's residence or the purchase of a new residence, and may create a balloon payment at maturity of this loan if the balloon payment is:

> (i) Expressly disclosed to the borrower;

> (ii) Agreed to by both the borrower and the lender/seller in writing; and

> (iii) Required to be postponed one time, upon becoming due, at the borrower's request, for a period not to exceed 6 months, provided that the borrower continues to make the monthly installments provided for in the original loan agreement, and no new closing costs, processing fees or similar

fees are imposed on the borrower as a result of the extension . . . ."

Code, § 12–404(c)(2) of the Commercial Law Article.

■ Although the disclosure provisions listed in (i) and (ii) explicitly require lenders to expressly inform borrowers in writing that a balloon payment provision is included within the loan, whether the postponement provision found in part (iii) is a necessary part of the express disclosure provisions listed in (i) and (ii) is less than clear. Informed by the maxim *"expressio unius est exclusio alterius,"* meaning the expression of one thing implies the exclusion of another, *Baltimore Harbor Charters, Ltd. v. Ayd,* 365 Md. 366, 385, 780 A.2d 303, 314 (2001), we conclude that, because the General Assembly expressly required written notice in the first two parts of the statute, the fact that it did not expressly require written notice in part (iii) reveals an intent to exclude notice for that provision, particularly in view of the fact that the provision was enacted at a later time than the other provisions. *See Macht v. Department of Assessments,* 266 Md. 602, 618–19, 296 A.2d 162, 171 (1972)(explaining that, where the Legislature enumerates specific instances allowing assessments, they have excluded any others by implication, and, thus, the maxim "expressio unius est exclusio alterius" appropriately controls such a situation); *see also Ridge Heating, Air Conditioning & Plumbing, Inc. v. Brennen,* 366 Md. 336, 352, 783 A.2d 691, 700 (2001)(stating that, when we attempt to harmonize different statutory provisions, we "presume that, when the Legislature enacted the later of the two statutes, it was aware of the one earlier enacted"); *Alan J. Cornblatt, P.A. v. Barow,* 153 N.J. 218, 708 A.2d 401 (1998)(explaining that, "where the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded").

■ Moreover, we are unable to find an instance, and have been referred to none, where this Court has inferred express notice from one provision in which express notice was required to another provision where express notice was not required. *Cf. Liverpool v. Baltimore Diamond Exch., Inc.,* 369 Md. 304,

313 n. 11, 799 A.2d 1264, 1269 n. 11 (2002) (noting that Section 14–1102 of the Maryland Sales Layaway Act requires that a "layaway agreement shall be in writing and contain all of the agreements of the parties and shall be signed by all of the parties to it"); *General Motors Corp. v. Schmitz*, 362 Md. 229, 236, 764 A.2d 838, 841 (2001)(observing that the statute at issue required that notice be "conspicuously disclosed to the consumer in writing"); *Anderson v. Ford Motor Credit Corp.*, 323 Md. 327, 335, 593 A.2d 678, 682 (1991)(finding that the lessor did not provide the lessees with a written statement containing the required disclosures under a statute requiring, among other things, a "written statement"); *Rockville Grosvenor, Inc. v. Montgomery County*, 289 Md. 74, 77, 422 A.2d 353, 356 (1980) (noting that the statute at issue was a "consumer protection disclosure statute" because it required a developer to prepare a "property report"). As we have explained, "[i]n order for one statute to alter or limit another, the intention of the Legislature to do so must be clear and manifest." *Mayor and City Council of Baltimore v. Clerk of Superior Court*, 270 Md. 316, 319, 311 A.2d 261, 263 (1973). Therefore, because the Legislature has not clearly manifested any intention to read the disclosure provisions found in parts (i) and (ii) into part (iii), we hold that Section 12–404(c)(2)(iii) does not require the lender to notify the borrower in writing about the statutory one-time postponement right.[9]

---

**9.** We further note that Section 12–404(c)(3) giving commercial borrowers a one-time postponement right was added to the statute after Section 12–404(c)(2)(iii), the provision at issue. 1985 Md. Laws, Ch. 115. During the same session, the General Assembly passed House Bill 195, which amended Section 12–404(c)(2)(iii) by reducing from 24 months to 6 months the amount of time residential borrowers could postpone the balloon provision payment. 1985 Md. Laws, Ch. 597. The bill file for House Bill 195 includes a Committee Report noting that Section 12–404(c)(2)(iii) requires lenders to expressly disclose the balloon payment; but, while it refers to the borrower's right to request a one-time six-month postponement option, like the legislative history for previous versions of Section 12–404(c)(2), it does not state that this option must be disclosed in writing to the borrower. *See* Committee Report on House Bill 195 at 1 (1985). We note, however, that the Committee Report also states, "[B]alloon payment transactions must give the consumer the right to request a postponement of the balloon

The Drews do cite a 1985 Attorney General Opinion construing Section 12–404(c)(3)(i), the Secondary Mortgage Law provision regarding balloon payments in commercial loans, as requiring the lender to give the residential borrower notice of the statutory postponement right under Section 12–404(c)(2)(iii). 70 Op. Att'y Gen. 87 (1985). Section 12–404(c)(3)(i) provides:

A commercial loan of $75,000 or less made under this subtitle need not be amortized in equal or substantially equal payments and may contain a balloon payment at maturity *if the borrower is authorized to postpone the maturity date one time* and continue to make installment payments as provided in the original loan agreement and the postponed maturity date does not exceed:

1. 24 months if the original maturity date is more than 12 months after the loan is made; or

2. 6 months if the original maturity date is 12 months or less after the loan is made.

Maryland Code, § 12–404(c)(3)(i) of the Commercial Law Article (1975, 2000 Repl.Vol.) (emphasis added).

The Attorney General found that the ordinary meaning of the phrase "authorized to postpone" required "the loan transaction [to] clearly give the borrower the right to postpone on a one-time basis ... the maturity date of the loan." 70 Op. Att'y Gen. at 89. The Attorney General then concluded that, because of the Secondary Mortgage Law's evident remedial purpose, Section 12–404(c)(2)(iii) also required the lender to give the borrower notice of the one-time postponement provision. *Id.* at 89–90.

---

payment once for a period not to exceed six months." *Id.* at 2. While this statement could be interpreted as requiring written disclosure because it uses the term "transactions," the word "transaction" is itself ambiguous, generally suggesting a business agreement, written or otherwise. *See* BLACK'S LAW DICTIONARY 1503 (7th Ed.1999) (defining transaction as "[t]he act or an instance of conducting business or other dealings ... [s]omething performed or carried out ... a business agreement or exchange ... [a]ny activity involving two or more persons").

Although we carefully consider Attorney General opinions, we are not bound by them. *See State v. Crescent Cities Jaycees Found., Inc.,* 330 Md. 460, 470, 624 A.2d 955, 960 (1993); *Valentine v. Board of License Comm'rs,* 291 Md. 523, 534, 435 A.2d 459, 465 (1981); *Read Drug & Chem. Co. v. Claypoole,* 165 Md. 250, 257, 166 A. 742, 745 (1933). While the issue of whether Section 12–404(c)(3)(i) requires notice of the one-time postponement option with respect to commercial loans of $75,000 or less is not before us, we are doubtful that under the Attorney General's reasoning that it does, particularly given the fact that Section 12–404(c)(3) does not even include the express disclosure provisions found in the first two portions of Section 12–404(c)(2). We also point out that, in addition to disagreeing with the Attorney General that Section 12–404(c)(2)(iii) requires notice, we also disagree with his comparison of Section 12–404(c)(2)(iii) and Section 12–404(c)(3)(i). We note that, unlike Section 12–404(c)(3)(i), Section 12–404(c)(2)(iii) does not use the phrase "if the borrower is authorized," and, contrary to the Attorney General, we do not think the language "at the borrower's request" and "authorized to postpone" are "parallel." *See* 70 Op. Att'y Gen. at 89. The phrases, in fact, are very different from each other, as one depends on the borrower taking the initiative to "request" postponement, while the other puts the onus on the lender to "authorize" it. *See* Section 12–404(c)(2)(iii)(stating "[r]equired to be postponed one time, upon becoming due, at the borrower's request ..."). As we have explained, "[i]t is a common rule of statutory construction that, when a legislature uses different words, especially in the same section or in a part of the statute that deals with the same subject, it usually intends different things." *Toler v. Motor Vehicle Admin.,* 373 Md. 214, 223, 817 A.2d 229, 235 (2003). We, therefore, are not persuaded by the suggestion that Section 12–404(c)(2)(iii) requires written notice.

## III. Conclusion

Section 12–404(c) does not require a seller or lender who takes a secondary mortgage or deed of trust securing all or a

portion of a residence's purchase price and creating a balloon payment to state in writing that the statutory postponement period of six months is available to borrowers. Because we so hold, we do not reach the question as to whether the penalty provisions found in Section 12–413 apply.

*CERTIFIED QUESTION ANSWERED AS SET FORTH ABOVE. PURSUANT TO § 12–610 OF THE COURTS AND JUDICIAL PROCEEDINGS ARTICLE. THE COSTS SHALL BE EQUALLY DIVIDED BETWEEN THE PARTIES.*

WILNER, J.

With respect, I dissent. The Court correctly identifies the Secondary Mortgage Loan Law, from which this dispute arises, as a consumer protection law. It was designed to curb predatory practices that had caused many people, often minorities and older people who were in debt and ignorant of the intricacies of the law, to lose their homes and become subject to crushing deficiency judgments for hugely inflated interest, costs, and fees. It is quintessentially remedial in nature and must be liberally construed to achieve the Legislature's objective. Regrettably, the Court fails to give the statute that required reading.

The Court acknowledges the problem caused by balloon payments. It recognizes that many States prohibit them altogether, as Maryland once did, but that the General Assembly later chose to allow them in two limited circumstances, both of which were subject to certain express conditions. Section 12–404(c) of the Commercial Law Article begins with the mandate that "[a] loan shall be amortized in equal or substantially equal monthly installments without a balloon payment at maturity." Three exceptions are stated to that mandate, two of which allow for a balloon payment. Section 12–404(c)(2)—the subsection at issue here—permits a lender who makes a loan for the purpose of aiding the borrower in the sale of the borrower's residence or the purchase of a new

residence to create a balloon payment at maturity of the loan, *but only*

"If the balloon payment is:

(1) Expressly disclosed to the borrower;

(2) Agreed to by both the borrower and the lender/seller in writing; and

(3) Required to be postponed one time, upon becoming due, at the borrower's request, for a period not to exceed 6 months, provided that the borrower continues to make the monthly installments provided for in the original loan agreement, and no new closing costs, processing fees or similar fees are imposed on the borrower as a result of the extension."

Unless those three conditions—all of them—are satisfied, the balloon payment is not allowed; it is expressly prohibited. The simple fact—noted but then ignored by the Court—is that the loan agreement here does not require the balloon payment to be postponed one time at the borrower's request. Because the agreement does not contain that requirement, the balloon payment is illegal. It violates the general mandate that a loan be amortized in substantially equal monthly installments "without a balloon payment at maturity." Indeed, the problem in this case goes beyond the mere absence of an affirmative right of the borrower to postpone payment. The agreement states affirmatively that there is no such right. How else can the statement, in capital letters, that "THE LENDER IN THIS TRANSACTION IS UNDER NO OBLIGATION TO REFINANCE THE OUTSTANDING PRINCIPAL BALANCE OF THIS LOAN DUE ON MATURITY DATE," be read?

Instead of reading the statute as it should, to carry out the clearly expressed intent of the General Assembly, the Court adopts the obfuscation offered by the holder of the mortgage—that the requirement of a one-time postponement does not have to be disclosed to the borrower, that the borrower does not have to be informed in the agreement that he/she has this right. What, then, is the point of having the right if it

does not have to be disclosed in the agreement—if, indeed, it can, in capital letters, be negated in the agreement? How are borrowers with fewer resources or less luck than the Drews supposed to know that they have the right to a one-time postponement when the balloon payment comes due? The Court says that its role is to apply the statute in a "commonsensical" manner. Why, then, does it not do so? It cannot possibly have been the legislative intent to impose this requirement as an express condition to allowing a balloon payment and yet permit the agreement not to contain the condition, much less to disavow the requirement, hoping, perhaps, that, in the end, the holder of the mortgage will gratuitously do the right thing. I would answer the certified question as I believe the Legislature intended it to be answered, in the affirmative. A negative answer, preferred by the Court, effectively repeals that provision of the statute.

Chief Judge BELL and Judge HARRELL have authorized me to state that they join in this dissent.